## NATIONAL SURETY CO. v. BOONE.

### 3 Div. 53.

Supreme Court of Alabama.

Nov. 9, 1933.

Rehearing Denied Dec. 21, 1933.

Hill, Hill, Whiting, Thomas & Rives, of Montgomery, and Richard H. Cocke, of Alexander City, for appellee.

Ball & Ball, of Montgomery, and Albert Hooton, of Dadeville, for appellant.

**KNIGHT, Justice.**

Action by Charlie L. Boone against the National Surety Company, surety on the official bond of John Kyle Young, sheriff of Tallapoosa county, for the alleged shooting of Boone by Dowdell Ware, a deputy sheriff under appointment of said Young. The shooting occurred in Tallapoosa county, and this suit was instituted and had against the said surety in Montgomery county. Neither the deputy, who is alleged to have done the shooting, nor the sheriff, is sued in the action.

There was no contestation on the trial over the fact that Ware was a deputy sheriff by appointment of the sheriff, and that he had been such since the 19th day of January, 1931, and was such deputy on June 5, 1931, the date on which the shooting is alleged to have occurred. The shooting took place at or near a still, upon which prohibited liquor was being, or had been, manufactured.

The plaintiff's testimony tended to show that plaintiff, and two or three others, had gone to the place for the purpose of procuring whisky; and that, without warning of any kind, as the plaintiff approached the spot where he was shot, the deputy sheriff, Mr. Ware, shot him twice with a shotgun, some of the shot from first load taking effect in his hip, and the second in his leg; that, after being shot, he was taken by the deputy sheriff to Dadeville, and there swore out a warrant against him.

Dr. Banks, examined as a witness by the plaintiff, testified, among other things, that he and Dr. Ferguson dressed the leg; that Boone "had a gunshot wound in the leg, in the lower part of the calf of the leg"; that "there were a few shots in the buttocks on that side." This witness further testified: "A bunch of shot came through on the side, went through the fleshy part of the leg; that the cause of having to amputate the leg was that he had a case of infection and also had periotesis of the leg which came on later," which the witness explained was a sort of blood poisoning or infection of the blood stream; that the amputation was necessary; that the injury, from an examination of the leg, "was caused by a shotgun, number 6 shot approximately were found in the leg." Dr. Gaines, a witness for plaintiff, testified that the shot entered from the back side of the leg.

The testimony on behalf of the defendant tended to show that Ware was a deputy sheriff under Mr. Young on the day of the shooting; that Ware was instructed by the sheriff to go to the still; that one Willoughby, chief of police of Dadeville, went with Ware on that occasion; that, when they reached the vicinity of the still it was in operation, making whisky; that there were three persons present at the still at the time, the plaintiff being one of them; that Ware saw Boone throw wood under the still; that Boone jumped across the branch to where Ware was; that Ware then jumped up, and that plaintiff grabbed him or grabbed at him, and there ensued a scuffle between Ware and

plaintiff; that plaintiff "fell backwards over into the branch" and Ware's gun shot; and that Ware also fell into the branch. The testimony of defendant tended to show that the gun was fired only once, and that the gun was fired in the scuffle, but the evidence on the part of defendant as to what caused the gun to fire is left more or less to conjecture. Ware, in testifying for defendant, testified in part on this particular point that he did not "take the gun and aim it at or point it at Charley Boone; that the gun shot when they fell, and that he didn't even know that it had shot him until after he (meaning plaintiff) told Willoughby." This witness further testified that he carried the plaintiff to the doctor's office, had the wound dressed, and then carried him to jail.

Mr. Willoughby, testifying on behalf of defendant, among other matters, stated: "That he went out on June 5, 1931, with Dowdell Ware to raid a still, being authorized to do so by Sheriff Young, the sheriff at that time; that he went with Ware that night. ❋ ❋ ❋ That he heard Ware say 'stop' and that a little afterwards a gun fired; that he ran out to where the gun fired and found Ware out there in the branch. ❋ ❋ ❋" On cross-examination the witness testified in part "that he was about twenty feet back of Ware, but couldn't see him; that he heard the gun shot, and when he got there Boone was leaning against the bank and that Ware was close to him."

There was verdict in favor of plaintiff for $2,999, and judgment accordingly.

A motion for new trial was made by defendant, and this was overruled by the court.

■ It is first insisted that the court committed error in overruling defendant's objection to the introduction in evidence of the certified copy of the bond of John Kyle Young, as sheriff of Tallapoosa county.

Whether or not at the time the plaintiff offered this bond in evidence, the state of the evidence warranted its introduction, evidence subsequently offered both by plaintiff and defendant made the bond admissible. Therefore, even if it be conceded, which it is not, that at the particular time the plaintiff offered this evidence there was not sufficient evidence before the jury, tending to show that in going to the still, and there shooting the plaintiff, in attempting to arrest him, the said Ware was acting under instructions from the sheriff, and therefore within the line and scope of his duty and authority as such deputy, or under the color of his office, subsequently admitted evidence cured any such claimed error. S. H. Kress & Co. v. Barratt, 226 Ala. 455, 147 So. 386; Southern R. Co. v. Lefan, 195 Ala. 295, 70 So. 249.

■ If it be a fact, as the testimony of Mr. Ware, the deputy, would tend to show,

that the plaintiff was engaged in manufacturing prohibited liquors at the time the deputy came upon him, it would have been his duty to arrest the plaintiff without warrant, even if he had not been sent there by Sheriff Young to raid the still and make an arrest.

In the case of Hereford v. Brentz, 192 Ala. 465, 68 So. 350, 351, it is held:

"In speaking of the power of a regular deputy to bind the sheriff while acting within the line or scope of his authority, it was said by this court, speaking through McClellan, J., in the case of Rogers v. Carroll, 111 Ala. 610, 20 So. 602: 'His powers, generally speaking, were those of the sheriff himself, and his acts were those of the sheriff. He had the same power to receive and execute all ordinary process as had the sheriff, and his acts or omissions under or in respect of process were the acts or omissions of the sheriff. In legal contemplation he and the sheriff *were one officer, so far as third persons are concerned*, as to all questions of civil responsibility.'

"The general deputy, like the sheriff, is a peace officer and has the same authority to arrest, with or without warrants; and if the deputy, while acting as such, commits a tort or trespass upon another, for which he would be liable, his chief would also be liable in the same degree and to the same extent, civilly, as the deputy himself." (Italics supplied.)

The recent case of Cain v. Skillin, 219 Ala. 228, 121 So. 521, 64 A. L. R. 1022, is here very much in point. Whether the said Ware was, or was not, acting in the line and scope of his authority, was a question for the jury, as held in that case; and, if acting within the line and scope of his authority as deputy sheriff, he improperly shot the plaintiff in performing his duty, the sheriff would be nevertheless liable civilly for the improper act. The sheriff being liable, under the plain terms of its undertaking, reading the law of the case into the bond as we must, the National Surety Company would, as surety on the sheriff's bond, be liable. The fact that the deputy may have improperly performed his duty, so long as he was acting within the line and scope of his authority, his principal, and the surety on his principal's official bond, will be liable civilly for the improper conduct.

The court committed no error in overruling defendant's objection to the introduction of the bond in evidence. Authorities supra; King v. Gray, 189 Ala. 686, 66 So. 643; Prewitt v. Neal, Minor, 386; Albright v. Mills, 86 Ala. 324, 5 So. 591.

■■ On cross-examination of defendant's witness Jim Boone, counsel for plaintiff asked him this question: "Mr. Boone, the sheriff has arrested you and you are under sentence, ain't you, right now?" The de-

fendant objected to the question on the ground that it was illegal, immaterial, and irrelevant. The court overruled the objection, and defendant excepted. The witness however answered: "No, sir, I ain't under no sentence." This answer was not excluded, and was favorable to defendant.

Apart from the fact that the witness had answered the question favorably to the defendant, we do not see that it was subject to the objection, being asked on cross-examination.

The sheriff and his deputy, while not before the court as parties defendant to this particular suit, nevertheless were interested in a way in its outcome. It was competent to show to what extent, if any, the witness was under duress of the sheriff, and how far, if to any extent, the witness was actuated by desire to court the favor of the sheriff in his behalf. Then, too, a wide latitude is allowed on cross-examination to develop before the jury the interest or bias of the witness. Johnson v. State, 199 Ala. 255, 74 So. 366, and authorities there cited.

The ruling of the court, in this particular, involved no error.

█ The appellant's fourth assignment of error seeks to present for review the action of the court in overruling defendant's objection to the following question to the witness Jim Boone: "And ain't he got you out of jail?" In the assignment we are referred to page 44 of the transcript. There is not shown on that page that the defendant reserved any exception to the ruling of the court with reference to said question, nor does it appear that the defendant at any time reserved an exception to the ruling of the court as to that question. It appears on page 44 of the transcript that the witness, after the court had sustained defendant's objection to the question, answered the question in the negative, and therefore favorable to defendant; hence the matter involved no injury to the defendant. Standard Paint & Lead Co. v. Ingram Hdw. Co., 221 Ala. 374, 129 So. 20.

The appellant also insists that the court committed error in overruling his objection to the following question propounded on cross-examination to the witness Jim Boone: "Wasn't all the officers together when they arrested you?" The witness answered in the negative, and this answer was favorable to defendant, and therefore involved no reversible error. Besides, we cannot affirm that the evidence called for was not within permissible bounds on cross-examination.

█ There was no error in the court's refusal to give, at the request of defendant, charges numbered D-2 and D-15 in the record. The charges were abstract, and besides they assumed, as a matter of law, that the plaintiff's refusal to remain in jail and re- ceive medical treatment there proximately brought about the infection, necessitating the amputation of said foot. The charges were therefore refused without error, and besides these charges were covered by given charges D-9 and D-10.

█ Defendant's charges D-13, D-17, D-20, and D-23 were manifestly bad, and refused without error.

█ The testimony in the case was such as to require its submission to the jury, and therefore the court properly refused to give the jury charge D-1, requested in writing by the defendant. This charge required a verdict in favor of the defendant, if the jury believed all the evidence.

█ Charges D-21 and D-22 stated no principles of law applicable to the case. It was of no moment to the jury, in the instant case, whether the plaintiff could or could not thereafter sue either Young or Ware, or both of them. That was no proper concern of the jury.

█ It does not appear from the bill of exceptions that the portion of the court's oral charge, made the basis of appellant's fifteenth assignment of error, was excepted to, and hence we cannot review the action of the court in this regard.

The bill of exceptions must show all exceptions "not presumed by law." Solnick v. Ballard, 218 Ala. 206, 118 So. 381; Illinois Central R. Co. v. Posey, 212 Ala. 10, 101 So. 644; Decatur Land Co. v. City of New Decatur, 184 Ala. 56, 63 So. 1024; Craig v. Etheredge, 133 Ala. 284, 32 So. 65; Ewing v. Wofford, 122 Ala. 439, 25 So. 251.

█ This brings us down to a consideration of the defendant's motion for a new trial.

We have carefully read and considered all the evidence offered on the main trial, and have likewise carefully reviewed and considered the affidavits submitted by defendant and plaintiff on the hearing of the motion for a new trial.

In the main, the affidavits submitted by the defendant relate to the testimony given upon the trial by the plaintiff's witness Bud, alias Gordon Harry, and Jock Cotney, and were in the nature of impeaching testimony. These witnesses had sworn that they were with the plaintiff at the time he was shot, and had testified as to the circumstances.

One of the affidavits submitted by the defendant was made by the witness Bud Harry, and in which he repudiated his testimony on the trial, and affirmed that it was untrue.

Other affidavits submitted by the defendant tended to show that the witness Bud Harry and Jock Cotney had made contradictory statements—statements to the effect that they were not present at the time of the shooting. And one affidavit, that of Dick

Blake, affirmed that Bud Harry and Jock Cotney were not at the still at the time of the shooting. Affidavits were also submitted by the defendant which were intended to show due diligence in its efforts to ascertain all facts in the case.

The plaintiff offered an affidavit made by Bud Harry completely recanting his former affidavit, in which he had admitted testifying falsely on the trial, and in this second affidavit he reaffirmed his testimony on the trial. The plaintiff also offered, on the hearing of the motion, affidavit of Jock Cotney, reaffirming his testimony on the trial, and denying statements attributed to him in affidavits submitted by plaintiff.

The bill of exceptions, with respect to the motion for a new trial, does not state that it contains all the evidence submitted on that motion.

The trial court, by overruling the motion, gave its judicial sanction to the verdict.

In our recent case of Cooke v. Embry, 219 Ala. 623, 123 So. 27, 30, in which the opinion was written by the late Justice Sayre, it was observed: "We do not find that the court erred in overruling defendant's motion for a new trial. The salient feature of the evidence in support of the motion was a statement by one of the proposed new witnesses going to impeach plaintiff's witness Lewis, who, as agent for defendant, had negotiated the contract with plaintiff for the latter's services in procuring a relocation of the highway, as we have before said. Such evidence is received and weighed with great caution (Jones v. Tucker, 132 Ala. 307, 31 So. 21), and, unless the case is so gross as to make it probable that the verdict was obtained by perjury, a new trial will not be granted on evidence going to the impeachment of a witness (1 Graham & Waterman on New Trials [2d Ed.] star page 221). Unless there was a palpable failure of evidence to support the finding of the jury, the action of the trial court in upholding the verdict will not be deemed erroneous. Cobb v. Malone, 92 Ala. 630, 9 So. 738."

In regard to the weight to be given by the court to the statements of a witness recanting his testimony, we quote the following, stated as a general rule, from 74 A. L. R. p. 757: "The recent cases support generally the view taken in the previous annotation that the courts, with their experience of witnesses, will pay in general but little regard to the statements of a recanting witness, and, at least on appeal, will not reverse the ruling of the trial court denying a new trial on the ground of newly discovered evidence showing that the witness had made statements which tended to establish that his testimony at the trial was perjured, whether the witness himself makes oath of the statement or not."

In support of the foregoing rule, numerous decisions are cited from other states. We think the rule sound.

In view of all the facts in the case, we are unable to affirm that the appellant has discharged the burden of showing that the verdict of the jury is so contrary to the weight of the evidence as to stamp it as unjust. The trial court was not so impressed, and, under the long-established rule declared in Cobb v. Malone, supra, we would not be justified in reversing the judgment of the trial court in this particular.

Moreover, the physical facts illustrated by the overalls worn by the plaintiff at the time he was shot, and which overalls were, by order of the court, sent up to this court for our inspection and consideration, in connection with the transcript, are corroborative of the plaintiff's contention that he was shot twice, not once, thus strongly tending to negative the fact that the shooting was accidental.

Finding no reversible error in the record, the judgment of the court below is affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.