Francis P. BAILEY, Individually and as Administrator of the Estate of Maude Elizabeth Bailey, Deceased, Appellants,

v.

CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY, Appellee.

No. 54060.

Supreme Court of Iowa.

Sept. 2, 1970.

Rehearing Denied Oct. 12. 1970.

John A. Jarvis, Chariton, for appellants.

Virgil E. Meyer, Chariton, for appellee.

RAWLINGS, Justice.

Action at law by Francis P. Bailey, individually, for automobile damage, and as administrator of the estate of Maude Elizabeth Bailey, deceased, for damages resulting from claimed negligence-caused-death of his decedent, killed instantly when the vehicle operated by her collided with defendant's train. Trial to jury resulted in a judgment on verdict for defendant. From adverse ruling on their motion for a new trial, plaintiffs appeal. We reverse.

At the outset, our review is restricted to the limited record presented.

■ Prior to trial an application for adjudication of law points was filed by plaintiffs. This, in effect, constituted a withdrawal of any claim for loss of decedent's company and affection as a spouse, and consortium. Trial court apparently so considered it and never ruled on the matter.

Subsequently plaintiffs moved for "Advance Ruling on Evidence" (Motion in Limine). In brief, it was thereby requested, defendant be barred from any trial reference to matters connected with a di-

vorce action commenced by decedent, prior to her death, against plaintiff Francis P. Bailey. Thereupon trial court ordered the divorce file and proceedings "shall be inadmissible in the trial of this case."

In course of trial defendant called as a witness Ward Reynoldson, attorney for decedent in the aforesaid divorce action, incidentally dismissed after her death. Despite timely privileged testimony and hearsay objections interposed by plaintiff individually and as administrator, Mr. Reynoldson was permitted to testify regarding statements made to him in course of three consultations with his client, plaintiff-administrator's decedent, which apparently took place about a year prior to the fatal accident.

On appeal plaintiffs contend, trial court committed reversible error in, (1) failing to enter any order on the adjudication of law points application; (2) failing to fully rule on the pretrial motion relative to introduction of evidence; and (3) permitting attorney Reynoldson to testify regarding statements made to him by his client in the pending divorce action.

These assignments will be considered in the order presented.

■ I. The initial problem to be resolved is whether trial court erred in failing to act on plaintiffs' application for adjudication of law points. In this respect we find no reversible error.

First, it is to us apparent an application under rule 105, Rules of Civil Procedure, was inappropriate under the circumstances. See National Farmers Union Property & Cas. Co. v. Nelson, 260 Iowa 163, 168, 147 N.W.2d 839.

■ This application was in essence a request for an advisory opinion by the court, not involving a true issue of law. See rule 176, R.C.P.; 71 C.J.S. Pleading § 516, page 1073; and 32 Iowa L.Rev. 417, 428. More precisely, no issue existed upon which plaintiffs could effectively invoke

rule 105. See 71 C.J.S. Pleading § 512, page 1068.

Actually plaintiffs thereby asked the court to do that which could be best effectuated by them procedurally, via an amendment to their petition.

■ Finally, by proceeding to trial on the merits, absent any request for a ruling on their application, plaintiffs must be deemed to have waived any right to later complain. See in that regard Shover v. Iowa Lutheran Hospital, 252 Iowa 706, 721, 107 N.W.2d 85; In re Estate of Coleman, 238 Iowa 768, 770, 28 N.W.2d 500; 89 C.J.S. Trial § 658, page 501; 5 Am.Jur. 2d, Appeal and Error, sections 557, page 40, and 562, page 42.

Further discussion of this issue will serve no useful purpose.

II. As heretofore disclosed, plaintiffs filed what is best identified as a pretrial motion in limine. Request was thereby made that defendant be precluded from mentioning or asking any questions in the selection of jurors, or in the jury's presence during trial of the subject case, regarding (1) claims made by decedent in the divorce action pending against plaintiff at time of her death or to their relationship with respect to affection, cooperation, company, society, companionship, comfort, care, advice, conjugal relations, distress of mind, sorrow or mental anguish; (2) any claims relative to alleged marital infidelity on the part of plaintiff individually in connection with the divorce action and attorney's fees or costs pertaining thereto, or discontinued marital relationship.

Trial court merely directed the divorce file and proceedings would be inadmissible.

It thus appears there is substance in the complaint here voiced by plaintiffs. Rule 118, R.C.P.

On the other hand this court said in Bourjaily v. Johnson County, Iowa, 167

N.W.2d 630, 632: "We have as yet refrained from predicating reversible error solely on the basis of the trial court's disregard of rule 118, at least in the absence of some compelling cause to hold otherwise. Nevertheless, we have repeatedly stated we much prefer specific rulings on each and every ground of a motion. (Authorities cited).

"Meaningful compliance with rule 118 greatly facilitates appellate procedure in that counsel are apprised of the precise grounds of the adverse ruling and are thereby enabled to properly and narrowly limit their arguments on appeal to the actual grounds responsible for the court's ruling. The ever increasing volume of appeals renders it imperative the rule be followed."

On remand, for reasons disclosed infra, trial court might well reconsider propriety of the subject order.

III. The next assignment of error relates to attorney Ward Reynoldson's testimony. Over timely privileged communication and hearsay objections by plaintiff individually and as administrator, Mr. Reynoldson testified to the effect Mrs. Bailey was his client in the previously mentioned divorce case, she consulted with him relative to that action on at least three occasions about a year or more prior to the fatal accident, and he was then told, (1) she had been nervous and upset for several years, lost some weight, encountered difficulty in sleeping, and was at times unable to keep from crying; (2) her husband had not stayed at home for years and seldom had a meal there; (3) talk in the community caused her to be upset; (4) the hired man's wife had five children, the father of the last two being Mrs. Bailey's husband; (5) an automobile Mrs. Bailey had been permitted to drive was taken from her by Mr. Bailey and the car he used was being driven by the hired man's wife.

Incidentally, decedent apparently reacquired the automobile or a replacement, since the one she was driving when the accident occurred belonged to her husband.

We shall first consider the privileged communication issue.

To the extent here relevant section 622.-10, Code, 1966, provides: "No practicing attorney, counselor, * * * who obtains such information by reason of his employment, * * * shall be allowed, in giving testimony, to disclose any confidential communication properly entrusted to him in his professional capacity, and necessary and proper to enable him to discharge the functions of his office according to the usual course of practice or discipline."

At the outset no claim of waiver is asserted. See 8 Wigmore on Evidence, McNaughton Revision, sections 2327–2329, pages 634–641, and Annos. 67 A.L.R.2d 1268. Furthermore, in testifying, Mr. Reynoldson made no reference to any possible or occasional presence of a third party. See Crawford v. Raible, 206 Iowa 732, 739–740, 221 N.W. 474; 97 C.J.S. Witnesses § 290, page 818; and 58 Am.Jur., Witnesses, section 492, page 275. Neither do we here deal with the matter of an attorney acting as a scrivener, nor with mental incapacity, undue influence, or pedigree. England v. England, 243 Iowa 274, 51 N.W.2d 437; Olsson v. Pierson, 237 Iowa 1342, 1346–1350, 25 N.W.2d 357, and In re Estate of Conner, 240 Iowa 479, 484–485, 36 N.W.2d 833, superseding the opinion in 33 N.W.2d 866, not contained in Iowa reports.

The attorney-client privilege embodied in Code section 622.10, supra, is of ancient origin. It is premised on a recognition of the inherent right of every person to consult with legal counsel and secure the benefit of his advice free from any fear of disclosure. Thus it protects and belongs to the client alone. Taylor v. Sheldon, 172 Ohio St. 118, 173 N.E.2d 892, 894–896; 8 Wigmore on Evidence, McNaughton Revision, sections 2290–2292, pages 542–557; 3 Jones on Evidence,

Fourth Ed., sections 748–749, pages 1344–1349; McCormick's Treatise on Evidence, section 91, page 181; 97 C.J.S. Witnesses § 276, page 782; and 58 Am.Jur., Witnesses, section 483, page 270.

■■ IV. Understandably there must exist an attorney-client relationship and the communication, to be protected, must have been made in confidence, the burden of proof being upon him who seeks to establish the privilege, but no express injunction of secrecy is essential. Allen v. Lindeman, 259 Iowa 1384, 1390–1391, 148 N.W. 2d 610; 8 Wigmore on Evidence, McNaughton Revision, section 2311, page 599; 3 Jones on Evidence, Fourth Ed., section 749, page 1346; McCormick's Treatise on Evidence, sections 95–96, pages 190–196; and 97 C.J.S. Witnesses § 284, page 808.

■ V. Additionally, the protective shield provided by Code section 622.10, quoted above, generally survives the client's death, termination of the relationship, or dismissal of a case in litigation.

To that effect is this authoritative statement in 8 Wigmore on Evidence, McNauughton Revision, section 2323, pages 630–631: "The subjective freedom of the client, which it is the purpose of the privilege to secure * * *, could not be attained if the client understood that, when the relation ended or even after the client's death, the attorney could be compelled to disclose the confidences, for there is no limit of time beyond which the disclosures might not be used to the detriment of the client or of his estate. It has therefore never been questioned, since the domination of the modern theory, that the privilege continues even after the *end of the litigation* or other occasion for legal advice and even after the *death of the client*."

As similarly stated in 58 Am.Jur., Witnesses, section 467, page 262: "Ordinarily, the protection given by the law to communications made during the relationship of attorney and client is perpetual, and

does not cease with the termination of the suit, nor is it affected by the party's ceasing to employ the attorney and retaining another, or by any other change of relation between them, *or by the death of the client*. The seal of the law once fixed upon them remains forever, unless removed by the party himself in whose favor it is there placed." (Emphasis supplied).

See also 3 Jones on Evidence, Fourth Ed., section 750, page 1350; McCormick's Treatise on Evidence, section 98, page 199; and 97 C.J.S. Witnesses § 282, page 797.

We now expressly adopt the foregoing principle as it relates to the ordinary attorney-client relationship.

VI. The above, however, does not alone fully reach or resolve the problem now before us.

As stated in 8 Wigmore on Evidence, McNaughton Revision, section 2311, page 599: "The privilege assumes, of course, that the communications are made with the intention of confidentiality."

■ Stated otherwise, no privilege protection ordinarily attends when a client imparts information to his attorney, (1) for transmittal to others; or (2) which the attorney is duty bound to make public; or (3) which is contained in any pleading or other document publicly filed or in some manner publicized for and on behalf of the communicant. See also Wolfle v. United States, 291 U.S. 7, 14–15, 54 S.Ct. 279, 280–281, 78 L.Ed. 617; McCormick's Treatise on Evidence, section 95, page 190; 97 C.J.S. Witnesses §§ 283i, page 804, and 289, page 816; 58 Am.Jur., Witnesses, section 491, page 274; and Annos. 26 A.L.R.2d 858, 864.

VII. Mindful of the foregoing, it is essential we turn now to the controlling trial record.

This first discloses there unquestionably existed between Mr. Reynoldson and Mrs. Bailey an attorney-client relationship when the subject statements were made by the

latter to the former. And as aforesaid, the client privilege, accorded by law, belonged to Mrs. Bailey alone.

Moreover, there can be no doubt regarding confidentiality of the matters involved, unless the statements by Mrs. Bailey were shown to have been made under such circumstances as to reasonably disclose they were to be communicated to others, or were in fact publicized on behalf of the client by some pleading or other legal paper.

In that respect the aforesaid trial record reveals no possible basis upon which to find Mrs. Bailey then anticipated or understood the questioned statements made by her to Mr. Reynoldson were for communication to others, or were subsequently publicized case-wise.

In fact Mrs. Bailey's vocal utterances are not shown to have been elicited for use in preparing any pleading, or were so made public. Rather they reveal nothing more than the giving of information by client to attorney for use generally in the discharge of his functions as legal counsel, i. e., information given sua sponte by a trusting client to her retained counsel.

A contrary conclusion would necessitate an assumption on our part, absent any such showing in trial, that Mrs. Bailey intended her comments be conveyed to others, or they were actually embodied in some legal papers filed in the then pending divorce action.

Admittedly, as already disclosed, no express request for secrecy is essential.

■ By the same token every client must be accorded benefit of the statutory privilege, once established as in this case, unless there is some realistic basis upon which to find absence of confidentiality, or a knowing and voluntary waiver. Any other approach would serve to materially erode the privilege and unduly restrict that free and open rapport between counsel and client so essential to the proper administration of justice. See in this regard Notes under Disciplinary Rules, 4–101, American Bar Association Code of Professional Responsibility, adopted August 12, 1969.

■ Upon the basis of the record made in trial we conclude the privileged communication objections repeatedly asserted by plaintiffs with regard to those questions asked of attorney Reynoldson were erroneously overruled.

VIII. By reason of the fact this case must be remanded for a new trial, plaintiffs' hearsay objections, directed to questions asked of the witness Reynoldson by defendant, should also be considered.

In Crane v. Cedar Rapids and Iowa City Railway Co., Iowa, 160 N.W.2d 838, at 845, we said: " 'Hearsay evidence has been defined as testimony in court or written evidence, of a statement made out of court; such statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter. McCormick, Evidence, page 460.' Daniels v. Bloomquist, 258 Iowa 301, 312, 138 N.W. 2d 868, 875." See also 31A C.J.S. Evidence §§ 193, page 520, and 205, page 573, and 29 Am.Jur.2d, Evidence, section 497, page 555.

It is apparent the evidence elicited from Attorney Reynoldson had for its purpose testimonial proof of facts thereby disclosed. This means, the information so obtained qualified as nothing more nor less than hearsay.

This alone, however, is not dispositive of the question before us.

■ IX. There are some well established exceptions to the rule prohibiting introduction of hearsay, among which are declarations against interest.

First, on that subject, it is not merely the statement but the fact stated which must be against the interest of a declarant. 5 Wigmore on Evidence, Third Ed., section 1462, page 269, and 1 Jones on Evidence, Fourth Ed., section 236, page 452.

Also the declaration must have been against the pecuniary or proprietary interest of the uttering party at time the statement was made. In re Estate of Andrews, 245 Iowa 819, 825, 64 N.W.2d 261; Weber v. Chicago R.I. & P.R. Co., 175 Iowa 358, 383–393, 151 N.W. 852; McCormick's Treatise on Evidence, section 253, page 546; 5 Wigmore on Evidence, Third Ed., sections 1457–1461, pages 262–269; and 31A C.J.S. Evidence §§ 217–224, pages 600-615. See also section 622.27, Code, 1966.

■ But the statements claimed to have been voiced by Mrs. Bailey were clearly neither disserving nor adverse to her interests at the time or times made. Consequently the evidence here in question does not come within any recognized "declaration against interest" exception to the hearsay rule.

■ X. Though not truly an exception, and probably better described as a variant to the hearsay principle, it is generally understood, anything said by a party-opponent may be used against him as an "admission", *provided it exhibits inconsistency with those facts presently asserted in pleadings or testimony.* 4 Wigmore on Evidence, Third Ed., sections 1048–1052, pages 2–12; 1 Jones on Evidence, Fourth Ed., section 236, page 452; 31A C.J.S. Evidence §§ 272–279, pages 696–710; and 29 Am.Jur.2d, Evidence, sections 600–607, pages 655–662.

That brings into play this pertinent comment in 22 Am.Jur.2d, Death, section 231, page 770: "The decedent's statements have been excluded for lack of privity, where sought to be introduced as admissions, and for lack of interest of the declarant in the subject matter of the action, where sought to be introduced as a declaration against interest.

"However, it seems that under certain circumstances there may be such privity between the deceased and the plaintiff in an action for the wrongful death of the former as to justify receiving in evidence, *as an admission,* a statement of the deceased against interest. Such justification is, of course, easy to see where the statute authorizing the action is regarded, not as providing a new cause of action for the death of the decedent, but as providing merely for the survival of the decedent's right of action for the wrongful act that caused his death." (Emphasis supplied.)

Referring now to sections 611.20 and 613.-15, Code, 1966, we said in Wendelin v. Russell, 259 Iowa 1152, 1157, 147 N.W.2d 188, 191: "This court has previously held the provisions of chapter 611 should be liberally construed to permit substitution of the representative of a deceased litigant in his place, the object of section 611.22 being to render available to such representative *all* the remedies to which the litigant, had he lived, might have resorted. (Authorities cited).

"Our survival statutes have also been said by us to preserve to the legal representative the original cause of action, enlarging the elements of damage to include wrongful death. And, any right to damages for wrongful death accrues to the administrator of a decedent's estate, the surviving husband or wife having no standing to sue for same in an individual capacity. (Authorities cited).

"The measure of damage for wrongful death in this jurisdiction has been held to be the present worth of the estate a decedent would reasonably be expected to save as the result of his efforts from time of death until the end of natural lifetime had he lived. To this may be added interest on reasonable funeral expense for such time as it was prematurely incurred. (Authorities cited)." See also observations relative to Code section 613.15, with authorities cited, in Schmitt v. Jenkins Truck Lines, Inc., Iowa, 170 N.W.2d 632, 661, and 48 Iowa L. Rev. 666, 667.

■ It thus appears our death damage acts, supra, do not provide a new cause of action. Rather, they constitute a survival

of decedent's right of action vested in the estate representative alone.

■ From this it follows, there existed such privity of estate between Mrs. Bailey, decedent, and plaintiff-administrator as to have made any "state of health admissions" by her admissible in evidence, *had inconsistency been adequately shown*, as they related only to the instant death damage action. In support hereof see also 4 Wigmore on Evidence, Third Ed., section 1080, page 134; 1 Jones on Evidence, Fourth Ed., section 239, page 458; 31A C.J.S. Evidence § 322, page 817; Annos. 114 A.L.R. 921, 927, and supplemental decisions. Incidentally, as an adjunct to the foregoing, see California v. Green (June 23, 1970), 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489.

Also, with regard to an offer of evidence for a limited purpose, see Lemke v. Mueller, Iowa, 166 N.W.2d 860, 870–871, and 88 C.J.S. Trial § 87, page 194.

An abbreviated trial record makes it impossible for us to determine with any reasonable degree of certainty the existence or nonexistence of inconsistency.

XI. Pursuing the matter one more step, Mr. Reynoldson's testimony disclosed other elements not directly related to Mrs. Bailey's then condition of health. In other words, plaintiff argues that over his repeated incompetent, irrelevant, immaterial and hearsay objections, defendant was erroneously permitted to adduce some evidence through this attorney going only to Mr. Bailey's alleged infidelity and related matters.

Again an abbreviated record makes it impossible for us to determine whether this qualifies as a variant to the hearsay rule, supra.

■ Additionally, the overruling of an objection on the ground evidence sought to be introduced is incompetent, irrelevant and. immaterial affords no cause for reversal unless the specific particular or particulars attendant upon that objection are per se obvious. See Schmitt v. Jenkins Truck Lines, Inc., Iowa, 170 N.W.2d 632, 656; Linge v. Iowa State Highway Commission, 260 Iowa 1226, 1231–1232, 150 N.W.2d 642, and Frederick v. Shorman, 259 Iowa 1050, 1060–1061, 147 N.W.2d 478.

For the same reason stated above, however, we are unable to determine whether there here existed any self-evident basis for the general objection made.

XII. The question now to be resolved is whether the errors relative to introduction of evidence by defendant over plaintiffs' objections, as disclosed in divisions VII and X hereof were prejudicial.

In that regard we need only refer to Bellew v. Iowa State Highway Commission, Iowa, 171 N.W.2d 284, 291. This court there held, when improper evidence is admitted in a law action, over timely and appropriate objections not affirmatively shown to have been later discarded, prejudice is presumed and judgment adverse to the objector will be reversed.

Here no semblance of showing was made to the effect plaintiffs ever abandoned the position taken under those timely and in this case adequate objections repeatedly interposed.

Resultantly, plaintiffs' motion for a new trial should have been sustained, despite defendant's belated attempt to mend its hold by way of resistance thereto.

XIII. In summary, had a proper foundational showing been made in course of trial, disclosing Mrs. Bailey's condition of health statements to attorney Ward Reynoldson were made by her for the purpose of publication, such as in the divorce action pleadings, or were in fact so used, they would not then have been privileged communications between client and attorney. But no such foundation was established.

Next, Mrs. Bailey's assertions to attorney Reynoldson regarding her then state of health, *if* inconsistent with pleading or evidentiary facts asserted in connection with plaintiff-administrator's death damage

action, would have qualified as admissions, not subject to hearsay objections. Again, inconsistency does not appear.

Reversed and remanded for a new trial.

All Justices concur, except UHLENHOPP and BECKER, JJ., who dissent, and STUART, J., who takes no part.

UHLENHOPP, Justice (dissenting).

The question here is whether communications by Maude E. Bailey to Attorney Ward Reynoldson during her lifetime are admissible against the fiduciary of her estate in this action by the fiduciary for damages for her death.

Francis P. and Maude E. Bailey were husband and wife. Mrs. Bailey met death in a collision at a railroad crossing.

If the communications in question are admissible and are believed by the jury, it appears that for about seven years prior to Mrs. Bailey's death, Mr. Bailey did not stay with her and took only an occasional meal at home. Instead, he carried on with his hired man's wife, Mildred Liddell, and slept down at the hired man's house. He treated Mrs. Bailey with indifference. Mrs. Bailey learned that the neighbors were talking about the situation and that the last two children of Mrs. Liddell were reputed to be Mr. Bailey's offspring. All this adversely affected Mrs. Bailey's health.

Eventually Mrs. Bailey consulted Attorney Reynoldson, who commenced a divorce suit for her. Mrs. Bailey was killed while the suit was pending. After her death, Mr. Bailey was appointed fiduciary of her estate and brought the present action against the railroad for "the value of her services and support which decedent would have contributed to her spouse", for "what she could be expected to accumulate from the time of her death to the end of her natural life", and for interest on funeral expenses prematurely paid. Likewise after Mrs. Bailey's death, the divorce suit was dismissed.

At the trial of the present action for Mrs. Bailey's death, defendant sought to introduce the court file in the divorce suit as well as statements made by Mrs. Bailey to Mr. Reynoldson in connection with the divorce matter. The trial court excluded the court file, but permitted Mr. Reynoldson to relate Mrs. Bailey's statements to him regarding Mr. Bailey's affair with the other woman and its effect on Mrs. Bailey's health.

The jury returned a verdict for defendant. The fiduciary appeals and urges that Mr. Reynoldson ought not to have been permitted to testify to Mrs. Bailey's statements to him because they are hearsay and privileged.

We should approach points of evidence mindful of the modern tendency to enlarge rather than to restrict the evidence juries may hear—"the principle that everything probative of some matters required to be proved should come in unless a clear ground of policy or law excludes it". E. Morgan and J. Maguire, Looking Backward and Forward at Evidence, 50 Harv.L.Rev. 909. See also I Wigmore, Evidence (3rd ed.) vii.

*Hearsay.* Mrs. Bailey's statements about her marital trouble are said to be inadmissible as admissions because not inconsistent with the fiduciary's present position. But the fiduciary is claiming damages for loss of the services Mrs. Bailey would have rendered as spouse, whereas Mrs. Bailey admitted in substance that she rendered practically no such services by reason of Mr. Bailey's absence. Thus the position of the fiduciary in his damage claim is in conflict with his decedent's admission. As said of similar admissions by a husband in Allen v. Riedel, 425 S.W.2d 665, 670–671 (Tex. Civ.App.), "Such evidence was important in determining the value of said things which his wife probably would have received from him had he lived."

Moreover, it is doubtful that admissions, in order to be admissible, need be contradictory to the present position of the party

against whom they are offered. Admissions of the opposing party or his privies are not merely impeachment, no foundation need be laid, and no prior inconsistent statement need be shown. Olson v. Hodges, 236 Iowa 612, 19 N.W.2d 676; McCormick, Evidence (1954) 503–04. Anything the opposing party has said ought to be useable against him unless irrelevant or impermissible under some exclusionary rule other than hearsay. Indeed, the sweeping statement is usually made that any utterance of an opposing party may be shown, if pertinent to the issues. Katcher v. Heidenwirth, 254 Iowa 454, 466, 118 N.W.2d 52, 59 ("The general rule concerning admissions is that they are competent when they constitute admissions of the existence of relevant matters."); McKelvey, Evidence (5th ed.) § 90 ("Admissions of parties to the action are always receivable."); American Law Institute, Model Code of Evidence, § 506. In actual practice, a party offers admissions because they are inconsistent with the opponent's present claims or demands, but that is not the basis for their admissibility. Cf. 4 Wigmore, Evidence (3rd ed.) § 1048(1) (b): "Thus, in effect and broadly, anything said by the party-opponent may be used against him as an admission, provided it exhibits the quality of inconsistency with the facts now asserted by him in pleadings or in testimony. (This proviso never needs to be enforced, because no party offers thus his opponent's statement unless it does appear to be inconsistent.)" See also Woodruff v. Pennsylvania R. R. Co., 52 Ill.App.2d 341, 349, 202 N.E.2d 113, 118 ("We view the statement made by plaintiff prior to trial as an admission, not as impeachment, and, as such the required inconsistency is minimal.").

Thus the trial court properly overruled the hearsay objection.

*Privilege.* The other objection is privileged communication. While somewhat incongruous, unquestionably plaintiff as fiduciary has the right to assert his decedent's claim of privilege although he uses the privilege to cloak her statements about his own misdeeds against her. The question is, are her statements privileged? On that question more facts must be considered.

When the testimony of Mr. Reynoldson was given on trial, the circumstances surrounding the making of the oral admissions by Mrs. Bailey were only sketchily shown, and the divorce file was excluded by the court. But plaintiff filed a motion for new trial after verdict, asserting as a ground that confidential communications were improperly admitted. An evidentiary hearing was held on the motion, and plaintiff himself called Mr. Reynoldson as a witness. Plaintiff examined Mr. Reynoldson regarding the circumstances of the conferences with Mrs. Bailey, and Mr. Reynoldson testified that one Martha Arnold, a friend or relative of Mrs. Bailey, was present when Mrs. Bailey told him the things he testified to. Mr. Reynoldson further testified in response to plaintiff's questions:

"To the best of my recollection I may have testified that she was accompanied by a lady by the name of Martha Arnold and to the best of my recollection Mrs. Arnold came over with her several times on several of the visits and I do specifically recall, and my memory being refreshed by my notes, Mrs. Arnold was present with her during the first visit to my office * * *. On subsequent occasions my recollection is sometimes she would come in the room and sometimes she would wait outside in the waiting room."

Also:

"Q. And Mrs. Arnold was present perhaps on only one of those occasions.

"A. She was present on more than one. *She was present the first time that Mrs. Bailey told me all the things I did testified to.*" (Italics added.)

Also:

"Q. Do you care to tell the court that you consider the relationship with Mrs.

Bailey and the information she divulged in the course as an attorney-client relationship?

"A. Yes. I would say Mrs. Arnold was present through the first meeting at which time she discussed Mr. Bailey's relationship with the hired man's wife, Mrs. Liddell; and she felt Mrs. Liddell's last two children, *and all the things she divulged there, Mrs. Arnold was present throughout the conversation.*" (Italics added.)

Nowhere does it appear that Mrs. Arnold was the agent or confidential clerk of Mr. Reynoldson or of Mrs. Bailey, or that she was there for any particular purpose. Plaintiff evidently hoped to show Mrs. Arnold was present as a prospective witness, but his inquiry of Mr. Reynoldson resulted in this:

"Q. Did you explain to Mrs. Bailey that she had to have a corroborating witness and she would be expected to have a corroborating witness?

"A. I don't have a recollection of that, but I don't believe we had proceeded to that state."

Also:

"Q. Mrs. Bailey did not know she was going to be required to produce a corroborating witness.

"A. I don't recall ever saying that to Mrs. Bailey that was required.

"Q. And you did not know Mrs. Arnold was going to be called as a corroborating witness.

"A. I don't know. We were not that close to trial."

Mr. Reynoldson also testified on the hearing on motion for new trial:

"I think everything that I testified to would be substantially in the court file." Also:

"I further felt that what I was testifying to was a matter of public record in the courthouse in Lucas County."

At the hearing on the motion for new trial, Mrs. Bailey's divorce pleadings were also before the court. In her amended pleading seeking a divorce, on file as a public record, Mrs. Bailey stated:

"That the Defendant quit having marital relations with the Plaintiff approximately seven years ago. That he has displayed no husbandly affection or consideration toward the Plaintiff in said time. That he appears at the house only occasionally to eat a meal. That to the knowledge of this Plaintiff, the Defendant has been keeping company with Mildred Liddell, the wife of a man living in the community where these parties reside. That the Defendant has slept at the home of Mildred during almost all of the aforesaid time. That all of said treatment has caused the Plaintiff to become nervous and upset, and it has caused her mental anguish and that she has lost weight and has lost sleep and that said treatment has adversely affected Plaintiff's health."

The first question on this branch of the case is, can the circumstances of the conferences between Mrs. Bailey and Mr. Reynoldson, as related by him on the hearing on motion for new trial, be considered in determining whether Mrs. Bailey's admissions were privileged? The answer would appear to be yes.

The post-trial testimony of Mr. Reynoldson may well be unnecessary to admissibility of Mrs. Bailey's admissions. No presumption arises from an attorney-client relationship alone that a communication is confidential, and the burden rests on the objector to establish privilege. Allen v. Lindeman, 259 Iowa 1384, 148 N.W.2d 610; 8 Wigmore, Evidence (McN. ed.) 600. Consequently, when the communications were offered on trial, it behooved plaintiff to ask to take the witness on voir dire to try to show confidentiality as a basis for objection. Plaintiff did not do so, and confidentiality was not affirmatively shown.

But if Mr. Reynoldson's post-trial testimony was necessary as a foundation for Mrs. Bailey's admissions, the situation comes within the general principle that error in admitting evidence because of insufficient foundation is cured if the foundation is subsequently supplied. 5A C.J.S. Appeal & Error § 1735, p. 1034. See also National Surety Co. v. Boone, 227 Ala. 599, 151 So. 447; Smith v. Lombard, 201 Cal. 518, 258 P. 55; W. A. Flint Co. v. John V. Farwell Co., 192 Ind. 439, 134 N.E. 664, reh. den. 192 Ind. 439, 136 N.E. 839; Thede v. Rusch, 65 N.D. 34, 256 N.W. 409. Consequently, if error was committed in admitting Mrs. Bailey's admissions without Mr. Reynoldson's explanation of the circumstances, the error was cured when that explanation was given. The jury did not have to hear this subsequent explanatory testimony, as it went to admissibility of the admissions, and admissibility is for the court. 8 Wigmore, Evidence (McN. ed.) 630. We ought not to send the case back in order to have this testimony given again; it is already before us, and it was before the trial court.

What then are the ground rules regarding reception of evidence claimed to be privileged? As already stated, no presumption arises from an attorney-client relationship that a communication is confidential. 8 Wigmore, Evidence (McN. ed.) 600. The burden of proof is on the objector. Allen v. Lindeman, 259 Iowa 1384, 148 N.W.2d 610. The trial court determines from the evidence adduced whether the requisite confidentiality exists. Steiner v. United States, 5 Cir., 134 F.2d 931, 935 ("a question of fact to be inquired into by the Court"); 8 Wigmore, Evidence (McN. ed.) 630 ("The claim of privilege being made, the *trial judge determines* whether the facts justify the allowance of the claim.").

As to the privilege itself, the essential element is confidentiality. Code, 1966, § 622.10 ("confidential communication"). As stated by Wigmore, Evidence (McN. ed.) 599, "The privilege assumes, of course, that the communications are made with the intention of confidentiality."

Any one of several factors may disclose absence of confidentiality. One is the presence of a third person, not an agent of the attorney or client. "One of the circumstances by which it is commonly apparent that the communication is not confidential is the *presence of a third person*, who is not the agent of either client or attorney. Here, even if we might predicate a desire for confidence by the client, the policy of the privilege would still not protect him, because it goes no farther than is necessary to secure the client's subjective freedom of consultation (§ 2991 *supra*). The presence of a third person (other than the agent of either) is obviously unnecessary for communications to the attorney as such, however useful it may be for communications in negotiations with the third person." Wigmore, Evidence (McN. ed.) 601–03. The rule is stated thus in 97 C.J.S. Witnesses § 290, p. 818: "Communications between attorney and client are not privileged where made in the presence of a third person, not the agent of either party, or in the presence of the adverse party or his attorney; but, where the third person who is present is the agent of either the client or the attorney, the privilege is not destroyed." A like statement, with an additional exception of a parent who must accompany a child for the interview, is found in 58 American Jurisprudence, Witnesses, § 492, pp. 275–76.

The element of confidentiality is also lacking in statements to an attorney embodied by him in a pleading for the client— at least, after the pleading is filed. The rule is stated more generally in McCormick, Evidence (1954) 191: "Wherever the matters to be communicated to the attorney are intended by the client to be made public or revealed to third persons, obviously the element of confidentiality is wanting." Applying the rule specifically to pleadings, the court stated in Wise v. Haynes, 103 S.W.2d 477, 481 (Tex.Civ. App.), "Where, as in the circumstances

here presented, facts are communicated to the attorney for the purpose of and are subsequently incorporated into the client's pleadings in a suit filed and prosecuted thereon, being for publication or transmission to others, are not in the nature of 'confidential' disclosures, and do not come within the rule of privileged communications between attorney and client." The court stated in Ex Parte Griffith, 278 Ala. 344, 350–351, 178 So.2d 169, 176–177, cert. den. 382 U.S. 988, 86 S.Ct. 548, 15 L.Ed.2d 475, "Whether a communication by a client to his attorney is privileged is a question of fact to be determined by the court. * * * Further, communications made by a client to an attorney which the attorney in the discharge of his duty is of necessity obliged to make public are not privileged. See White v. State, 86 Ala. 69, 5 So. 674. This rule is applicable to facts communicated by a client which are to be alleged in a pleading." See also 97 C.J.S. Witnesses § 283, p. 806 (no privilege as to pleadings made public "or as to statements made by the client to the attorney of facts to be incorporated in such pleading").

What is the situation here? Mrs. Bailey disclosed the information to Mr. Reynoldson, to the extent he gave testimony on trial, in the presence of a third person, Mrs. Arnold. No showing whatsoever was made that Mrs. Arnold was the agent of the client or of the attorney. An attempt to show she might be a corroborating witness failed.

Moreover, the information given to Mr. Reynoldson, and testified to by him, was embodied by him in Mrs. Bailey's pleading and was filed and made public in her behalf. A court will not assume that an attorney commences a suit and files a pleading without his client's authority; the presumption is the other way. 7 C.J.S. Attorney and Client § 73, p. 878; 7 Am. Jur.2d, Attorneys at Law, § 116, p. 118.

Based on the evidence before it, the trial court found that "the matters testified to by Ward Reynoldson were matters which were divulged in the presence of Martha Arnold, a friend and relative of Mrs. Maude Bailey, further that the matters testified to by Attorney Ward Reynoldson were at the time of the trial of this cause, and still is a matter of public record in the amendment to petition filed in Equity No. 18821, and that it is the finding of this Court that said matters were not confidential and therefore not within the privilege of attorney-client communications * * *." The finding of the trial court was well within the evidence and the claim of privilege was properly denied.

Finally, since exclusionary rules necessarily prevent the jury from hearing some relevant information, contemporary authorities in the field of evidence resist extension of privileged communications to new professions and oppose expansion of existing privileges beyond necessity. E. g., McCormick, Evidence (1954) 165: "The courts often say that privileges, since they curtail the truth from disclosure, should be strictly construed. One may go further, and believe that the privileges are never sufficiently helpful in protecting the outside interests they purport to foster, to justify their obstructive effect in cloaking the facts * * *. The manifest destiny of evidence law is a progressive lowering of the barriers to truth. Seeing this tendency, the commentators who take the wide view, whether from the bench, the bar, or the schools, seem generally to advocate a narrowing of the field of privilege." And the American Bar Association's Committee on Improvements in the Law of Evidence, after rejecting proposals to extend the privilege to new occupations, had this to say: "The correct tendency would rather be to cut down scope of the existing privileges, instead of to create any new ones." Report of Committee on Improvements in Law of Evidence, A.B.A., 63 A.B.A.Rep. 570, 595 (1938).

In Iowa, testimonial privileges are statutory. Code, 1966, § 622.10. Our duty to give effect faithfully to legislative enactments requires us to apply the privileges in

accordance with the statutory provisions. We ought not, however, extend the privileges unnecessarily, especially where a trial court has properly found on the evidence that the element of confidentiality is lacking.

The judgment of the trial court ought to stand.

BECKER, J., joins in this dissent.