STATE of Iowa, Appellee,

v.

Matthew TENSLEY, Appellant.

No. 58932.

Supreme Court of Iowa.

Jan. 19, 1977.

**660**

Carlin & Darbyshire, Davenport, for appellant.

Richard C. Turner, Atty. Gen., Ray W. Sullins, Dorothy L. Kelley, Asst. Attys. Gen., Edward N. Wehr, County Atty., and Realff H. Ottesen, Asst. County Atty., Davenport, for appellee.

Heard before MOORE, C. J., and RAWLINGS, LeGRAND, REYNOLDSON and HARRIS, JJ.

HARRIS, Justice.

Defendant was charged in separate counts of a county attorney's information with the crimes of burglary with aggravation in violation of § 708.2, The Code, and with assault with intent to commit rape in violation of § 698.4, The Code. Upon his plea of not guilty he was tried and convicted by a jury on both counts. In this appeal he challenges a pretrial ruling upon the State's application to discover a psychological report and a trial ruling relating to jury instructions. We find both assignments to be without merit and affirm the trial court.

Taking the evidence in the light most favorable to the verdict the jury could have believed the following. Matthew Tensley (defendant) entered the apartment of Patricia Oaks at approximately 4:00 a. m. on December 14, 1974. Defendant was armed with a knife. He assaulted Patricia who had been sleeping on a living room couch. Defendant forced Patricia into a bedroom and pushed her onto a bed. He grabbed the top of her blue jeans whereupon Patricia fought back, fled to the kitchen, and began telephoning the police. Defendant then came into the kitchen, took some money from Patricia's purse, and left through the back door.

After pleading not guilty defendant informed the court he intended to rely on the defense of diminished responsibility. Defendant's theory was that his mental state rendered him incapable of forming the specific intent which is an element of each of the crimes charged. Upon his own application and pursuant to court order defendant was examined at county expense by Dr. Paul Hauck, a clinical psychologist of Rock Island, Illinois.

Prior to trial the prosecution sought to discover the contents of Dr. Hauck's report. At the hearing held upon the State's application to discover, defendant revealed he intended to call Dr. Hauck as a witness to substantiate his defense of diminished responsibility. Thereafter the following colloquy occurred between court and defense counsel:

"THE COURT: Then I think it is relevant; at least the result is relevant. And it should be disclosed so that the State can in its case in chief present evidence to establish defendant's capacity to form specific intent. I would not require you to produce the letter in its entirety at this time, until such time as the psychologist has testified and the State is in a position to cross-examine him concerning the credibility the jury is entitled to place on his testimony. But I think they are entitled to the result, to know whether or not at the trial of this case * * * they must meet the burden of overcoming the defendant['s claim] of inability to form the specific intent.

"MR. KOOS [Defense Counsel]: Your Honor we plan to use that as a defense and we feel that Dr. Hauck's testimony will support the defense.

"THE COURT: That will be my ruling at this time. You can anticipate my requiring it be prepared for impeachment at * * * [the] time the psychologist is called by the defense to testify.

"MR. KOOS: All right?

" * * *

"THE COURT: All right. * * * [T]hat will be the ruling of the court on the specific motion * * *. At least we have disclosed the result and the fact that they do intend to rely on the defense of diminished responsibility; and, of course, that doesn't shift the burden. The State also has the burden to prove that the defendant had that requisite intent. That will conclude this hearing."

At trial defendant called Dr. Hauck as a witness. On direct examination Dr. Hauck testified (1) he interviewed defendant, (2) he gave defendant a series of behavioral, achievement, and perceptual tests, (3) he concluded defendant was borderline mentally retarded and suffered from a perceptual problem indicating minimal brain dysfunction, (4) he believed defendant was generally capable of making a reasonable decision, (5) he further believed that in certain emotionally charged situations defendant could not make a reasonable decision. Upon completion of Dr. Hauck's testimony defendant was required to produce a copy of Dr. Hauck's report for the prosecution. The prosecution's complete cross-examination of Dr. Hauck was as follows:

"MR. SCHEBLER [The Prosecutor]: From your examination of Mr. Tensley, Dr. Hauck, what is your opinion as to whether or not Mr. Tensley has the ability to form an intent to steal?

"DR. HAUCK: He has that intent. He has that ability. He could decide if he were confronted with a certain situation. He could say 'Hey, I want to steal something,' sure.

"MR. SCHEBLER: Would your answer be substantially the same in an intent to rape?

"DR. HAUCK: Sure.

"MR. SCHEBLER: I have no further questions."

I. Defendant argues the report of Dr. Hauck was confidential and not subject to discovery. Confidentiality is urged, not on the basis of the physician-patient privilege, but on the basis of the attorney-client privi-

lege. It is clear the physician-patient privilege does not apply to Dr. Hauck's report.

The question is whether the attorney-client privilege is applicable to the present case. See generally Annot., 44 A.L.R.3d 24, 123–124 and 134–136. In certain circumstances it seems pretrial psychiatric examinations might fall under the attorney-client privilege. We find no Iowa authority on the question.

■ The attorney-client privilege in Iowa is provided in § 622.10, The Code. Our cases interpreting that section have given it a liberal construction but clearly indicate not every communication to an attorney falls within the privilege. See *State v. Bedel,* 193 N.W.2d 121, 124 (Iowa 1971); *Bailey v. Chicago, Burlington & Quincy Railroad Co.,* 179 N.W.2d 560, 564 (Iowa 1970); *Allen v. Lindeman,* 259 Iowa 1384, 1390, 148 N.W.2d 610, 615 (1967). The burden is upon one claiming the attorney-client privilege to establish it. *Bailey,* 179 N.W.2d at 564.

■ The attorney-client privilege involves an element of confidentiality. *Bailey,* 179 N.W.2d at 564; *Henke v. Iowa Home Mut. Cas. Co.,* 249 Iowa 614, 618–619, 87 N.W.2d 920, 923–924 (1958). The trial court rightly determined Dr. Hauck's communication to defendant's counsel could be divided as to content and conclusion. As to the conclusion (the result of the examination) the trial court determined no confidentiality was intended.

It is to be remembered the trial court was advised prior to trial by defense counsel that defendant intended to rely on the defense of diminished responsibility. The examination was procured in connection with that defense. Under the trial court's ruling defendant was merely required to reveal the result before rather than during trial. The result of the examination was never protected by the attorney-client privilege. It is clear defense counsel always intended to reveal at least the result of the examination. Consequently it cannot be said the result was ever intended to be confidential. The trial court was correct in so ruling.

■ A different question is presented with regard to the detailed communications occurring during the process of defendant's examination. We need not speculate whether the detailed communications were intended to be confidential. If we assume they were so intended any privilege was waived as to the subject matter of the prior inquiry. Where the attorney-client privilege does exist for pretrial psychiatric examinations the cases indicate a waiver occurs when the doctor testifies. See Annot., 44 A.L.R.3d 24, 59–61 and 149–151.

We believe it would be unfair to permit the defense to elicit favorable aspects of the communications without permitting the prosecution an opportunity to elicit unfavorable aspects. We hold waiver of any attorney-client privilege occurred in the present case when Dr. Hauck testified. Hence there was no violation of the attorney-client privilege. After Dr. Hauck testified in chief the trial court rightly required disclosure of his detailed report for use in the doctor's cross-examination.

■ Neither can it be claimed disclosure of the report violated defendant's right against self-incrimination. See *State v. Collins,* 236 N.W.2d 376, 378 (Iowa 1975); *United States v. Baird,* 414 F.2d 700, 709–710 (2 Cir. 1969); 21 Am.Jur.2d, Criminal Law, § 365, pp. 389–390. Defendant's first assignment is without merit.

II. Defendant's second assignment is directed to two sentences in the instruction on diminished responsibility. Defendant argues the instruction shifted to him the burden to prove he lacked the requisite specific intent. The two sentences were as follows:

" * * * Defendant's mental condition is a defense only when the mental disability produced thereby is such as to render the defendant incapable of forming the requisite criminal intent. Even though one may be suffering from a mental condition, he will not be absolved of criminal responsibility if he still possesses mental capacity sufficient enough to entertain the intent requisite to a particular offense."

■ Neither defendant's requested instruction nor the uniform instruction of the Iowa State Bar Association contain the challenged language. However the rule is clear the trial court is not bound to any model or form in wording instructions. *State v. McGranahan,* 206 N.W.2d 88, 92 (Iowa 1973). A requested instruction may be properly refused if the point raised is otherwise substantially covered. *State v. Hall,* 235 N.W.2d 702, 725 (Iowa 1975); *State v. Stanton,* 214 N.W.2d 125, 126 (Iowa 1974); *State v. Orozco,* 202 N.W.2d 344, 347 (Iowa 1972). Instructions must be considered as a whole and not in isolation. *State v. Buchanan,* 207 N.W.2d 784, 787 (Iowa 1973); *State v. Lynch,* 197 N.W.2d 186, 189–190 (Iowa 1972).

■ Taking the instructions in this case as a whole we note instruction 8 informs the jury specific intent is an element of the burglary charge. Instruction 10 explains that specific intent is an element of assault with intent to commit rape. Instructions 14 and 15 state the burden is upon the State to establish each element beyond a reasonable doubt. These instructions point out a verdict of not guilty must be found if the State fails to prove any one of the necessary elements. In addition instruction 13, the one complained of, re-emphasizes the fact defendant has no burden to produce evidence or call witnesses. Nothing in the two sentences complained of contradicts what is said about the burden of proof.

We do not agree with defendant's claim the trial court's instructions shifted the burden of proof. His second assignment is without merit.

AFFIRMED.