STATE of Iowa, Appellee,

v.

Edward A. CRUSE, Appellant.

No. 57149.

Supreme Court of Iowa.

April 16, 1975.

Rehearing Denied June 16, 1975.

James A. Campbell, of Peters, Campbell & Pearson, Council Bluffs, for appellant.

Richard C. Turner, Atty. Gen., Dorothy L. Kelley, Asst. Atty. Gen., and Lyle Rodenburg, County Atty., for appellee.

Heard before MOORE, C. J., and RAWLINGS, UHLENHOPP, HARRIS and McCORMICK, JJ.

RAWLINGS, Justice.

Defendant, Edward A. Cruse, appeals from judgment on jury verdict finding him guilty of murder in the second degree. We affirm.

Cruse was charged by county attorney's information with having committed murder in violation of Section 690.1, The Code 1973.

January 8, 1974, trial commenced. After the State had rested defendant unsuccessfully moved for a directed verdict. At close of all evidence a like motion was also overruled. The case was submitted to the jury and verdict returned as aforesaid.

Our examination of the record discloses this instantly involved factual situation.

At all times here concerned Mrs. Bertha Nelson owned residential property in Council Bluffs. She did not regularly reside there but rented the same to her two daughters, Theresa Parks and Mary Love. The latter's husband, Wayne, also resided there. Defendant was a frequent guest and had arrived at the aforesaid residence Saturday, October 27, 1973, for a weekend visit with Theresa Parks.

At approximately 4:00 p. m., Sunday, October 28th, Wayne Love (decedent) was resting in a bedroom when a phone call came for him. Mary Love tried to awaken her husband but was seemingly unable to do so. Shortly thereafter Love entered the kitchen where his wife, Mrs. Nelson and Theresa were conversing. Love stated he had been lying in bed feigning sleep and heard the women ridiculing his size. Love called the women names and swore at them, talked loudly and pounded the table. Theresa started crying.

Defendant Cruse, then asleep in the livingroom, was awakened by the noise. He entered the kitchen and inquired as to what was taking place. Upon being advised to the effect Love had called Theresa a "bitch" defendant opined Love should apologize. At that point Love "jumped up" and said to Cruse "I have been wanting a piece of your ___ anyway." Defendant stated he did not want trouble and began moving away. Mrs. Nelson and her daughter unsuccessfully endeavored to placate Love. Defendant backed from the kitchen into the livingroom with Love following him. The two men were approximately four or five feet apart. Although unarmed, Love was a man of imposing size (about 350 pounds) and strength. Having moved backward into a corner of the livingroom with his

back to the television set, defendant reached to the rear and in so doing knocked a picture off the TV. He testified his hand there came to rest on a .38 caliber revolver. Cruse then pointed the gun at Love. The latter continued moving forward and said "go ahead and shoot" or "you got the Goddam thing now \* \* \* you are going to have to use it." At this juncture the record discloses defendant testified, in relevant part:

> "[W]hen he said that, that's when to me, he reached for this same fork in front of me. \* \* \* It looked like to me that's when he reached for it. His hand was out of sight. When his hand went out of sight, seemed like to me I just pulled the trigger and after the shot was fired, I saw him in front of me. \* \* \* [H]e was coming after me. He had his hands up all the time and to me he was lurching and reaching for it and the only thing I could see was the fork and I knew that's when he was reaching for the fork, because that was the only thing that was there. And when he reached for the fork and I pulled the trigger on the gun, I mean I didn't know I had even hit him. I didn't know that I killed him. I didn't know nothing. Only thing I knew is that the gun went off."

After having fired the revolver defendant placed it on a highboy in the bedroom. Cruse claims he then, for the first time, noticed the weapon had only one shell in it. The gun was normally loaded and kept in a bedroom dresser drawer.

Cruse now contends trial court erred in overruling his directed verdict motions because (1) circumstantial evidence was improperly considered in determining the State had met its burden of showing defendant did not act in self-defense, (2) even if circumstantial evidence was properly considered, the State did not produce sufficient evidence to create a jury issue as to self-defense.

■ I. At the threshold it is appropriate to note we have recently held error cannot be predicated on failure to grant a directed verdict at close of the State's case where additional evidence is offered. See State v. Valde, 225 N.W.2d 313, 317 (Iowa 1975); State v. Hansen, 225 N.W.2d 343, 348 (Iowa 1975). Here, however, Cruse did renew his motion on presentation of evidence presented after the State had rested and thus preserved error, if any, as to grounds properly thereby asserted.

II. This court has said these four elements must be present in order to justify homicide in self-defense:

> "(1) the slayer must not be the aggressor in provoking or continuing the difficulty that resulted in the homicide; (2) he must retreat as far as is reasonable and safe before taking his adversary's life, except in his home or place of business; (3) he must actually and honestly believe he is in imminent danger of death or great bodily harm and that the action he takes is necessary for self-preservation—this danger need not be real, but only thought to be real in the slayer's mind, acting as a reasonable prudent person under the circumstances; (4) he must have reasonable grounds for such belief." State v. Badgett, 167 N.W.2d 680, 683 (Iowa 1969).

See also Code §§ 691.1, 691.2.

■ Unquestionably, self-defense need not be formally invoked or specially pled. See State v. Vick, 205 N.W.2d 727, 731 (Iowa 1973).

■ And when such defense has been raised in a case the prosecution must establish nonexistence thereof beyond a reasonable doubt. See State v. Vick, supra; State v. Fields, 199 N.W.2d 144, 146 (Iowa 1972); Annot., 43 A.L.R.3d 237.

■ If there is substantial evidence upon which a jury could reasonably find any of the above stated self-defense elements were lacking, then the overruling of defendant's directed verdict motions cannot be deemed error.

In this regard we observed in State v. Bell, 223 N.W.2d 181, 184 (Iowa 1974):

"On an appeal challenging sufficiency of the evidence the court views the evidence in the light most favorable to the State and accepts all reasonable inferences tending to support the verdict. The cause should be submitted to the jury if there is any substantial evidence reasonably supporting the charge. Only evidence which would support the verdict need be considered."

See also State v. House, 223 N.W.2d 195 at 196 (Iowa 1974); State v. White, 223 N.W.2d 163, 164 (Iowa 1974).

■ III. Focusing upon the first issue here presented defendant argues, since there was an eyewitness to the crime trial court was confined to an examination of direct evidence in passing on his directed verdict motion predicated on lack of evidence to show he did not act in self-defense. It is thereupon contended trial court erroneously considered circumstantial evidence. He maintains State v. Haffa, 246 Iowa 1275, 71 N.W.2d 35 (1955), cert. denied, 350 U.S. 914, 76 S.Ct. 198, 100 L.Ed. 801 and State v. Sedig, 235 Iowa 609, 16 N.W.2d 247 (1944) uphold his position.

These cases do not support defendant's paralogistic assumption that Mrs. Nelson's eyewitness presence precluded use of circumstantial evidence.

■ Absence of self-defense may, in any event, be established by direct or circumstantial evidence. See State v. Fields, *supra*; State v. Badgett, 167 N.W.2d at 684.

IV. We turn now to defendant's remaining assignment to the effect the evidence failed to show as a matter of law he did not act in self-defense.

Unquestionably defendant was not the aggressor. And the jury was, in essence, instructed defendant had no duty to retreat. So the question now posed is whether the State produced sufficient evidence to show defendant did not have cause to reasonably believe he was in imminent danger of death or great bodily harm and the action taken by him was not essential to self-preservation.

■ Understandably, no absolute rule has been formulated by which to determine what precise conduct by an assailant is sufficient to reasonably induce such fear. See State v. Harris, 222 N.W.2d 462, 466 (Iowa 1974); State v. Crutcher, 231 Iowa 418, 421–422, 1 N.W.2d 195 (1941). Mere threats do not ordinarily suffice. See State v. Crutcher, *supra*. See also 40 Am.Jur.2d, Homicide, § 156. Furthermore, fear of an ordinary battery, no matter how severe, does not justify the killing of an assailant. See State v. Kennedy, 20 Iowa 569, 573 (1866). But an actual physical assault is not always a prerequisite to use of a deadly weapon in self-defense. See State v. Crutcher, *supra*.

■ Viewing the evidence in a light most favorable to the State we conclude trial court correctly determined a factual issue existed. Briefly stated, the circumstances preceding and at time of the shooting could be so resolved by a fact finding body as to negate defendant's claim of self-defense. Trial court did not err in overruling defendant's directed verdict motions.

Affirmed.