**STATE of Iowa, Appellee,**

v.

**Robert OVERSTREET, Appellant.**

No. 54981.

Supreme Court of Iowa.

June 30, 1976.

David P. Miller, Davenport, for appellant.

Richard C. Turner, Atty. Gen., Earl W. Roberts, Jr., Asst. Atty. Gen., Edward N. Wehr, County Atty., for appellee.

Heard before REYNOLDSON, Acting C. J., and MASON, RAWLINGS, REES, and HARRIS, JJ.

MASON, Justice.

Robert Overstreet was charged by county attorney's information with the murder of Leymon Fields in violation of section 690.2, The Code. A jury returned a verdict finding him guilty of second degree murder. He appeals from judgment imposing sentence upon that conviction.

The incident giving rise to the charge occurred Christmas Eve 1970 at Freeman's Tap in Davenport. The record discloses defendant and several others proceeded from the Davenport home of Robert Liddell to Freeman's tavern at around 9:00 p. m. on Christmas Eve. One witness stated to police defendant loaded a gun before entering the bar, but both defendant and the witness denied this at trial. In any event, decedent Fields had already arrived at the time defendant's party walked in.

Defendant and Fields, who were at least acquaintances, went into the men's room with two others, leaving the door open. While it is not clear what transpired, Miss Williams, the barmaid on duty, thought Fields and defendant were arguing, so she told them if they wished to continue to go outside. At this point the men left the restroom and walked up to the bar. There was testimony each told the other he had no gun.

At the bar the argument resumed. Defendant testified Fields accused him of drinking his beer and demanded defendant buy him another. The barmaid's second admonition apparently caused defendant to walk away. Unfortunately, he returned and Miss Williams saw him slap Fields. Another witness heard a "lick pass" but did not see who delivered it. When Fields stood up the waitress observed defendant had a pistol. There was no real conflict whether defendant possessed a gun, but the testimony was not in agreement whether Fields pulled a knife.

At this point, defendant fired three shots into Fields. Even so wounded, a several minute scuffle ensued continuing until Fields weakened and fell mortally wounded to the floor. Several witnesses testified defendant was cut behind the ear which defendant claimed Fields administered before he fired the shots.

In any event, defendant testified he in fact shot Fields, but that it was in self-defense. This testimony was in direct conflict with that of the State's rebuttal witnesses, two Davenport detectives. They testified defendant, on Christmas morning after being advised of his constitutional rights and privileges, stated he did not know who shot Fields, claiming the shots came from behind.

After the shooting and after Fields fell to the floor defendant dropped the pistol and ran from the tavern. The police, called to the scene by Miss Williams, found a bone handled knife and pistol which was later identified as the murder weapon by means of ballistics testing. One officer examined Fields and decided he was probably dead. In fact, he was pronounced dead on arrival at the hospital, and doctors performing the subsequent autopsy concluded death was caused by a bullet through the heart.

Meanwhile, other police officers were informed they could find defendant at the Liddell home. After considerable abuse from persons at this house, the police finally coaxed defendant from the attic with the threat of tear gas and placed him under arrest. Trial ensued.

At the close of State's evidence, the defense moved for a directed verdict on the ground the pistol (exhibit 1) "had not been connected to the defendant, not been identified by one witness as belonging to the defendant, nor connected to him in any manner." The trial court overruled the motion.

Defendant again submitted a motion for a directed verdict at the end of all evidence. The several grounds urged in support thereof were: (1) the pistol was not connected to defendant; (2) the only direct evidence defendant committed the crime came from his own lips and not from the testimony of other witnesses; and (3) the evidence was insufficient to submit the case to the jury. This motion too was overruled in every respect.

Finally, defendant objected the jury instruction on flight was unwarranted for the reason that while defendant possibly fled from the scene he did not know Fields was dead. A flight instruction, however, was given.

Following the verdict of guilty, defendant filed a "motion for new trial and to set aside the verdict" for the reasons, (1) the murder weapon was not connected to defendant, (2) the flight instruction was erroneous, (3) the verdict resulted from passion and prejudice, in that the jury was white and defendant black, (4) the verdict was "contrary to the law and evidence," and (5) there was a witness whom defense attorney "did not find and could not find at the time he was trying the case" who possessed knowledge of decedent's "mean propensities." (The affidavit of this witness revealed Fields was the aggressor in a fight previous to the one involved in this case, that he was "a menace in the Black community and was a person with a mean character" who would force money from people. It was further stated Fields, an aggressive trouble maker, hated defendant. Affiant further opined defendant "did a service to the Community" by shooting Fields).

The trial court overruled the motion for new trial and sentenced defendant to a life term at hard labor. June 1, 1971, defendant filed notice of appeal. This court subsequently ordered new counsel be appointed to handle the appeal.

Defendant maintains: (1) the evidence will not support the verdict in view of his complete defense of self-defense; (2) the trial court erroneously submitted the flight instruction; (3) the trial court committed reversible error by overruling defendant's motion for a new trial based upon newly discovered evidence; and (4) the sentence of life imprisonment at hard labor constituted an abuse of discretion.

These contentions present the issues for review.

I. Defendant initially contends the evidence as a matter of law does not support the verdict. Although the argument in support of this proposition is rather confus-

ing, it nevertheless appears defendant asserts a reasonable doubt as to his guilt existed as a matter of law. Expressed differently, the contention is the State did not prove the nonexistence of self-defense beyond a reasonable doubt.

In a nutshell, defendant's argument boils down to this: the facts bearing upon self-defense were undisputed, even in view of the State's rebuttal evidence bringing into question defendant's credibility. Thus, the problem was one of application of the law to undisputed facts—a question of law for the court rather than a question of fact for the jury. It is also argued the question whether the gun admitted into evidence was actually used by defendant was one of law.

The evidence was in dispute on the issue of self-defense. The State, in its brief and argument, aptly points out a factual dispute was shown by the evidence as to "whether or not the appellant retreated as far as was reasonable, honestly believed he was in eminent (sic, imminent) danger of death or great bodily harm, and had reasonable grounds for such belief, * * *." These factors, the State asserts, "must be resolved on the basis of what the various witnesses described as having occurred."

Once again we repeat the principles of law governing the scope of our review in a criminal action.

▮ In making a determination as to the propriety of the court's ruling on a motion for directed verdict in a criminal case this court views the evidence in the light most favorable to the state regardless of whether it is contradicted and every legitimate inference that may be fairly and reasonably deducted therefrom must be carried to the aid of the evidence.

▮▮ In light of this principle the cause in a criminal action should be submitted to the jury and the court should not direct a verdict of acquittal if there is any substantial evidence reasonably tending to support the charge. Either direct or circumstantial evidence may be sufficient to warrant a

verdict of guilty. However, where circumstantial evidence alone is relied on as to an essential element the circumstances must be entirely consistent with defendant's guilt, wholly inconsistent with any rational hypothesis of his innocence, and so convincing as to exclude a reasonable doubt that defendant was guilty of the offense charged. Like direct evidence it must raise a fair inference of guilt, generate something more than suspicion, speculation or conjecture.

 It is equally well settled that on defendant's appeal from criminal conviction based on jury verdict challenging sufficiency of evidence to sustain the verdict, this court views the evidence in the light most favorable to the State and accepts as established all reasonable inferences tending to support the jury's action. It is necessary to consider only the supporting evidence whether contradicted or not. It is for the fact finder, not us, to resolve questions of fact and determine the credibility of witnesses. Thus, a finding of guilt by the trier of fact is binding on this court unless we find it is without substantial support in the record or is clearly against the weight thereof. See State v. Reeves, 209 N.W.2d 18, 21 (Iowa 1973); State v. Dahlstrom, 224 N.W.2d 443, 447–448 (Iowa 1974); State v. Menke, 227 N.W.2d 184, 188 (Iowa 1975); and State v. Rosewall, 239 N.W.2d 171, 173 (Iowa 1976).

 One who seeks to rely upon self-defense must in some manner interpose that defense before the burden falls upon the state to prove beyond a reasonable doubt he was not acting in self-defense. However, under a plea of not guilty an accused may avail himself of the defense of self-defense without being required to specially plead ·this defense. See State v. Vick, 205 N.W.2d 727, 731 (Iowa 1973).

In State v. Cruse, 228 N.W.2d 28, 30 (Iowa 1975), this court recognized the following elements must be present in order to justify homicide in self-defense: " '(1) the slayer must not be the aggressor in provoking or continuing the difficulty that resulted in the homicide; (2) he must retreat as far as is reasonable and safe before taking

his adversary's life, except in his home or place of business; (3) he must actually and honestly believe he is in imminent danger of death or great bodily harm and that the action he takes is necessary for self-preservation—this danger need not be real, but only thought to be real in the slayer's mind, acting as a reasonable prudent person under the circumstances; (4) he must have reasonable grounds for such belief.' * * [citing authorities]."

 The prosecution's duty to prove the nonexistence of self-defense beyond a reasonable doubt may be accomplished by direct (testimonial) or circumstantial evidence. See State v. Cruse, 228 N.W.2d at 30 and 31. Furthermore, whether facts disclosed are sufficient· to justify a self-defense killing is a question of law for the trial court. However, the existence of such facts is for the jury.

 The facts disclosed by defendant's version of the Christmas Eve events would arguably have justified a killing in self-defense. By the same token, witnesses other than defendant imparted a different story of .those events which, it believed, would not have justified the homicide. Since the credibility of witnesses in a law action is for the jury, (i. e., since the existence of facts disclosed by the record is a question for the jury), the trial court was correct in overruling defendant's motion for directed verdict.

 In our view there is substantial competent evidence in the record to sustain the jury's verdict. In this regard, it is sufficient to note there was evidence defendant was the aggressor. Miss Williams testified defendant called Fields a name and slapped him. Another witness heard, but did not actually see, a "lick pass." Thus, substantial evidence was adduced upon which the jury could reasonably find one or more of the essential elements of self-defense was lacking. This being so, there was sufficient evidence to support the verdict.

As we understand, defendant supports his argument in this court by stating the ad-

mission of the murder weapon into evidence was a question of law for trial court. It follows this assertion must entail the contention admission of the gun constituted error. Again viewing the evidence in the light most favorable to the State, it appears defendant used a pistol to shoot Fields. This deed accomplished, he dropped the weapon and fled from the tavern. A few minutes later, police officers discovered it lying on the floor. Subsequent tests resulted in the conclusion the bullets which mortally wounded Fields were fired from this gun.

"* * * It is not required that a weapon or other instrument be identified positively before its admission can be had. It is only necessary that it be found under circumstances affording a basis for a reasonable inference on a point in issue. * * * [citing authorities]." *State v. Johnson,* 162 N.W.2d 453, 456 (Iowa 1968). See also *State v. Galvan,* 181 N.W.2d 147, 151 (Iowa 1970) and *State v. Hansen,* 225 N.W.2d 343, 349 (Iowa 1975).

■ The trial court did not err in light of the record before us in admitting the gun into evidence.

II. Defendant argues here that instruction 9A on flight was erroneous because it informed the jury " * * * flight was a circumstance tending to connect the defendant with the commission of the crime, and the jury would be justified in considering such flight *as evidence of guilt.*" The emphasized portion, it is declared, creates a presumption of guilt which by itself could lead "to a finding of guilt on flight evidence alone."

The State initially counters defendant did not properly preserve error. Defendant's trial counsel (different from his appellate counsel) objected to the instruction because he thought there was no "evidence that shows that he fled as this instruction says, in flight to avoid arrest. He fled maybe from the scene, but he didn't know that the man was dead. And for that reason I don't think the instruction is warranted." In defendant's motion for a new trial it is like-

wise contended the trial court erred in giving the flight instruction.

■ This court has time and again declared objections to instructions must be specific. *State v. Baskin,* 220 N.W.2d 882, 886 (Iowa 1974). Furthermore, " * * * if a defendant excepts to instructions at trial he must rest on those exceptions. He may not later amplify or change them. *State v. Buchanan,* 207 N.W.2d 784, 787 (Iowa 1973)." *State v. Lyles,* 225 N.W.2d 124, 127 (Iowa 1975).

It would stretch the imagination to conclude defendant's contention before this court that the instruction creates a presumption of guilt was adequately raised by his objection at trial that the evidence did not warrant submission of the instruction. The same is true of the new trial motion's blanket assertion.

■ Under this record defendant's contention urged in this court presents nothing for review since it was not properly preserved in the trial court.

III. Defendant further contends a new trial should have been granted on the basis of newly discovered evidence. The contents of the affidavit in support of the motion, set out earlier, consisted of a statement by John Sharoian that Fields was the aggressor in a previous gun fight between defendant and Fields, that Fields was a "menace" to the black community, possessed a mean and extortionate character, was aggressive and hated defendant. In the motion itself, defense counsel asserted he "had located a witness whom he did not find and could not find at the time he was trying the case."

It is also argued before this court defendant would have called to the stand two subpoenaed police officers who had apparently investigated the earlier fracas. This evidence was offered at the *sentencing stage in mitigation of sentence,* but the trial court refused it. In any event, what these policemen would have testified to in no manner was included within or as a basis for the motion for a new trial by affidavit or otherwise. The assertions in relation to the police officers' would-be testimony are

not properly before this court. Review is thus limited to consideration of the Sharoian affidavit.

"We have consistently held a defendant must make the following showing in order to establish a new trial is warranted on the basis of newly-discovered evidence:

"1) The evidence was discovered following trial and before judgment.

"2) It was not such as could have been discovered before the conclusion of the trial in the exercise of due diligence.

"3) It must be material to the issue, not merely cumulative or impeaching, and

"4) Such evidence will probably change the result if a new trial is granted. * * * [citing authorities]." *State v. Jackson,* 223 N.W.2d 229, 233 (Iowa 1974). See also *State v. Farley,* 226 N.W.2d 1, 3 (Iowa 1975) and *State v. Kramer,* 231 N.W.2d 874, 881 (Iowa 1975), where the same principles are set forth in somewhat different language.

*State v. Jackson,* 223 N.W.2d at 233, has this further statement which is relevant here:

"* * * [W]e note this court has long recognized the broad discretion vested in trial courts in passing on motions for new trial based upon newly discovered evidence, and that such motions are not favored in the law and should be closely scrutinized and sparingly granted. * * * [citing authorities]. The underlying rationale for that position is our recognition trial courts are generally in a better position than the reviewing court to determine whether evidence, newly-discovered, would probably lead to a different verdict on retrial. Consequently, we have taken the position ' * * * findings on conflicting evidence by trial courts on motions for new trial based on newly discovered evidence [should] remain undisturbed except for most extraordinary circumstances * * * ', and this court will not interfere with the trial court's ruling on such a motion unless it is reasonably clear the court abused its discretion. * * * [citing authorities]."

Thus, the question presented is condensed into whether the trial court abused its wide discretion in applying the four above mentioned elements.

It appears this new evidence was discovered following trial and before judgment. Whether defense counsel's statement he did not and could not find Mr. Sharoian indicates due diligence is rather questionable. In *State v. Farley,* 226 N.W.2d at 4, it was declared:

" 'The showing of diligence required is that a reasonable effort was made. The applicant is not called upon to prove he sought evidence where he had no reason to apprehend any existed. He must exhaust the probable sources of information concerning his case; he must use that of which he knows, and he must follow all clues which would fairly advise a diligent man that something bearing on his litigation might be discovered or developed. But he is not placed under the burden of interviewing persons or seeking in places where there is no indication of any helpful evidence.' "

Rather than basing the decision on the due diligence factor, however, it is clear application of the third and fourth elements resolve the issue in favor of the trial court's ruling. This evidence was cumulative in nature. The State aptly notes there was "evidence before the trial court that the deceased victim had tendencies to resort to physical aggression and violence. The appellant's version of the tavern fight pictured Leymon Fields as the aggressor all the way, demanding that * * * [defendant] buy him a beer, and cutting appellant when appellant refused."

Furthermore, it cannot be said the evidence shown by the affidavit would probably have changed the result of the trial.

"Regarding the probability of a different result if a new trial was granted, the trial judge was confronted with a problem requiring evaluation of conflicting evidence. Since he saw and heard the witnesses he was in a superior position to make this evaluation. * * * [citing authority]." *State v. Farley,* 226 N.W.2d at 4.

■ We find no reason to interfere with the trial court's ruling denying defendant's

motion for new trial. The determination was a matter within the trial court's discretion and there was no abuse shown.

IV. Defendant finally argues the sentence of life imprisonment at hard labor was "manifestly too severe and disproportionate to the degree of guilt" and thus should be reduced under authority of section 793.18, The Code.

At sentencing, the trial court discussed the 37-year-old defendant's prior criminal convictions *and afforded defendant the opportunity to correct any mistakes.* This colloquy revealed defendant had twice been convicted of manslaughter (a stabbing and a shooting) and once for assault with intent to inflict great bodily injury. The shooting death involved in the case before us occurred only three to four months after defendant's last release from prison and constituted the third human being defendant had killed over the prior 15 years. The court noted any rehabilitative efforts through the prison system had not decreased defendant's "propensity for violence." The court then noted with justification:

"And I think to require the members of society to test your further rehabilitation at the risk of the life of any of its members would be an abuse of my discretion in imposing sentence at this time."

In *State v. Cupples,* 260 Iowa 1192, 1197, 152 N.W.2d 277, 280, it is said:

"The trial court and we on review should weigh and consider all pertinent matters in determining proper sentence, including the nature of the offense, the attending circumstances, defendant's age, character and propensities and chances of his reform. The courts owe a duty to the public as much as to defendant in determining a proper sentence. The punishment should fit both the crime and the individual. * * * [citing authority]."

■ Clearly, the life sentence "fit both the crime and the individual." Our review has been greatly benefitted by the trial court's transcribed reasons for sentence. The record manifestly demonstrates the tri-

al court properly exercised its discretion in sentencing defendant.

The case is

Affirmed.