STATE of Iowa, Appellee,

v.

James Robert BEYER, Appellant.

No. 59816.

Supreme Court of Iowa.

Oct. 19, 1977.

354

Eugene P. Van Driel and Charles R. Servison, Davenport, for appellant.

Richard C. Turner, Atty. Gen., Raymond W. Sullins, Asst. Atty. Gen., Des Moines,

and Edward N. Wehr, County Atty., Davenport, for appellee.

Submitted to MOORE, C. J., and MASON, LeGRAND, UHLENHOPP, and REYNOLDSON, JJ.

REYNOLDSON, Justice.

Defendant was charged with murder after a shooting incident at Davenport on February 28, 1976. He was found guilty of the included offense of manslaughter. Defendant appeals from his conviction and sentence of imprisonment in the Men's Reformatory at Anamosa for a period not to exceed eight years. We affirm.

Defendant's wife Patricia previously had been married to Garland Sullivan, the shooting victim. Patricia had custody of the two young Sullivan children.

February 28, 1976, Garland and his then-wife Stella went to Davenport to visit the children. Upon learning defendant and Patricia were at a local tavern, they joined them. There ensued an evening of drinking extending from about 4 p. m. to 9:30 p. m.

Following a quarrel between defendant and Patricia the four became involved in an intense argument at defendant's apartment concerning the children's welfare. From the evidence the jury could have found Garland wanted to take them home overnight to avoid their exposure to the controversy between defendant and their mother.

Garland and Stella left the house but Garland, angry at leaving the children behind, returned. Defendant obtained a 357 magnum revolver from his bedroom. The two confronted each other on an interior stairway leading up to defendant's living quarters, defendant pointing his gun at Garland. The gun discharged, fatally wounding Garland in the chest.

For reversal, defendant relies on certain alleged trial court errors discussed in the divisions which follow.

### I. *Did trial court err in denying bail?*

Defendant asserts trial court erroneously failed to admit him to bail, thereby handicapping him and his counsel in trial preparation.

We note at the time of trial court's action defendant did not seek relief by habeas corpus or certiorari. See *Ford v. Dilley,* 174 Iowa 243, 156 N.W. 513 (1916); 8 Am.Jur.2d Bail and Recognizance § 54, pp. 815–816 (1963). Under those circumstances different considerations would apply. See *Stack v. Boyle,* 342 U.S. 1, 4, 72 S.Ct. 1, 3, 96 L.Ed. 3, 6 (1951); *Pugh v. Rainwater,* 557 F.2d 1189, 1200 (5th Cir. 1977); *Heikkinen v. United States,* 208 F.2d 738, 742 (7th Cir. 1953).

Trial court based its ruling denying bail on § 763.1, The Code, 1975:

> "All defendants are bailable both before and after conviction, by sufficient surety, except for murder in the first degree and kidnaping for ransom where the proof is evident or the presumption great."

The court found "the proof is evident and the presumption is great that the crime charged constituted murder in the first degree and that the defendant should be denied bail."

Apparently the above statute is rooted in that portion of article I, section 12, Iowa Constitution, which provides, "[a]ll persons shall, before conviction, be bailable, by sufficient sureties, except for capital offenses where the proof is evident, or the presumption great." See *State v. Fowler,* 248 N.W.2d 511, 514–515 (Iowa 1976); 8 Am. Jur.2d Bail and Recognizance §§ 28–31, pp. 800–802 (1963). Section 763.1, supra, was repealed effective January 1, 1978. Acts 66 G.A. ch. 1245, ch. 4 § 526 (1976). The substitute enactment will make all defendants bailable before conviction. Acts 66 G.A. ch. 1245, ch. 2 § 1101 (1976); see J. Roehrick, The New Iowa Criminal Code, A Comparison, p. 395 (1975).

The State argues this issue is moot. A question is moot when the issues it presents are merely academic, and any judgment rendered can have no practical legal effect. *State v. Wilson,* 234 N.W.2d 140, 141 (Iowa 1975), and citations. Ordinarily we will not decide moot questions unless the issue

presented is of substantial public interest, in which case we will exercise a discretion to decide it. *Catholic Char. of Arch. of Dubuque v. Zalesky*, 232 N.W.2d 539, 543 (Iowa 1975); *Board of Dir. of Ind. Sch. Dist. of Waterloo v. Green*, 259 Iowa 1260, 1264, 147 N.W.2d 854, 856 (1967).

■ Trial court's bail ruling does not present an issue of substantial public interest warranting decision on the merits. Nor would even illegal detention in and of itself void a subsequent conviction. *Gerstein v. Pugh*, 420 U.S. 103, 119, 95 S.Ct. 854, 865, 43 L.Ed.2d 54, 68 (1975); *State v. Fowler*, supra, 248 N.W.2d at 515; *cf. State v. Grady*, 231 N.W.2d 869, 874 (Iowa 1975).

On the other hand, the larger issue would not be moot if trial court erroneously denied bail and thereby prejudicially handicapped defendant's trial preparation. See *State v. Shea*, 218 N.W.2d 610, 615 (Iowa 1974).

■ Defendant presented no proof his trial preparation was impaired. See *State v. Ogle*, 78 Wash.2d 86, 87, 469 P.2d 918, 919 (1970). The record before us shows he was accorded the full panoply of discovery processes. He was granted the right to depose 22 persons, which included those witnesses named in the county attorney's information. A court order allowed the defense to examine virtually all physical evidence including the gun, bullet, casing, fingerprints, clothing, autopsy, police photographs and sketches, and report of police dispatch orders. Defendant was permitted, and used, services of a private investigator at public expense.

We are not convinced denial of bail hampered defendant's trial preparation. We therefore hold no error can be predicated on trial court's bail ruling.

## II. *Did trial court err in failing to direct a verdict for defendant?*

Defendant asserts trial court erroneously denied his motions for directed verdict at close of State's evidence and at close of all evidence, arguing State failed to negate his defense the homicide was in self-defense.

■ Reversible error cannot be posited on failure to direct a verdict at close of State's evidence where, as here, defendant subsequently presented evidence. *State v. Evans*, 248 N.W.2d 521, 522 (Iowa 1976); *State v. Conner*, 241 N.W.2d 447, 460 (Iowa 1976). However, the motion made at the conclusion of all evidence preserved defendant's challenge to the sufficiency of the evidence. *State v. Conner*, supra, 241 N.W.2d at 460; *State v. Dahlstrom*, 224 N.W.2d 443, 446 (Iowa 1974).

Our rules for reviewing a ruling on a motion for directed verdict recently were capsulated in *State v. Overstreet*, 243 N.W.2d 880, 883–884 (Iowa 1976). We view the evidence in the light most favorable to the State regardless of whether it is contradicted. Only evidence supporting the verdict need be considered. We accept all reasonable inferences tending to support the verdict. The evidence must generate more than a suspicion, speculation or conjecture, and must be sufficient to raise a fair inference of guilt. If any substantial evidence reasonably supported the charge, trial court's submission of the cause to the jury must be affirmed. See *State v. York*, 256 N.W.2d 922, 927 (Iowa 1977).

■ Self-defense will justify homicide if four conditions are met:

(1) Slayer was not aggressor in provoking or continuing the difficulty that resulted in homicide,

(2) Slayer, except in own home or place of business, reasonably retreated before committing homicide,

(3) Slayer actually believed there was imminent danger of death or great bodily injury requiring an act of self-preservation, and,

(4) Reasonable grounds supported that belief. *State v. Fisher*, 246 N.W.2d 918, 920–921 (Iowa 1976); *State v. Overstreet*, supra, 243 N.W.2d at 884.

■ When a self-defense issue is raised, prosecution must prove nonexistence of self-defense beyond a reasonable doubt.

*Overstreet,* supra, 243 N.W.2d at 884; *State v. Cruse,* 228 N.W.2d 28, 30 (Iowa 1975). What particular facts will justify a self-defense killing is a question of law for trial court. Existence of such facts is a question for the jury. *Overstreet,* supra, 243 N.W.2d at 884; *State v. Haffa,* 246 Iowa 1275, 1288–1289, 71 N.W.2d 35, 43 (1955). Where evidence is conflicting or of such a character that different inferences might reasonably be drawn, the self-defense issue should be submitted to the jury for determination of the circumstances that existed at the time of the confrontation. *State v. Fisher,* supra, 246 N.W.2d at 920–921; *State v. Haffa,* supra, 246 Iowa at 1289, 71 N.W.2d at 43.

There is no dispute defendant was in his own home when he shot Sullivan. This eliminates the issue whether defendant reasonably retreated from Sullivan.

■ However, trial testimony regarding who instigated the confrontation that culminated in the killing, and whether defendant actually and reasonably believed himself in imminent danger, did create fact issues. The jury, not the court, is to judge credibility of witnesses. *Overstreet,* supra, 243 N.W.2d at 884.

Under our above review rules we may ignore at this point defendant's testimony he tried to avoid the confrontation, was afraid of Garland, believed the latter was armed with a shotgun, and Garland's sudden movement caused defendant to jump, discharging his revolver.

There was credible testimony defendant was in a belligerent mood and knew Garland was unarmed. An eyewitness testified Garland was quiet and stationary on the steps with both hands in plain view and empty when defendant fired.

■ There was substantial evidence upon which the jury reasonably could have found three elements of self-defense were absent. We hold trial court was right in overruling defendant's motions for directed verdict.

### III. Were *trial court's jury instructions erroneous?*

Defendant urges trial court erred in submitting certain jury instructions over his objections, and in failing to submit some of his requested instructions.

A. Defendant unsuccessfully objected when trial court's instructions submitted to the jury second-degree murder and manslaughter as lesser included offenses. He raises this as ground for reversal here without citation of authority. Defendant argues the State made an irretrievable election when the county attorney's information charged murder in violation of § 690.2, The Code ("First-degree murder") rather than § 690.1 ("Murder").

■ Murder is a single offense consisting of two degrees. The degrees are not distinct offenses but graduations of the crime devised to permit variation in punishment. *State v. Fuhrmann,* 257 N.W.2d 619, 624 (Iowa 1977); *State v. Nowlin,* 244 N.W.2d 596, 604 (Iowa 1976). A sufficient indictment or information simply may allege "A.B. murdered C.D." §§ 773.-35, 773.34, 769.13, The Code. A specification that the murder was "in the first degree" is unnecessary and may be disregarded as surplusage. § 773.31, The Code; *State v. Martin,* 243 Iowa 1323, 1330, 55 N.W.2d 258, 262 (1952); see *State v. Kelley,* 253 Iowa 1314, 1319, 115 N.W.2d 184, 186–189 (1962). So also would an allegation, as in this instance, that the murder was "in violation of Section 690.2."

■ We hold the language charging murder "in violation of Section 690.2" does not foreclose submission of included offenses. Section 690.2 merely defines first-degree murder and prescribes its punishment. More pertinent is § 690.4 which relevantly provides, "[u]pon the trial of an indictment for murder, the jury, if it finds the defendant guilty, must inquire, and by its verdict ascertain and determine the degree * * *."

■ In the case before us application of the legal test and factual test dictated submission of second-degree murder and manslaughter. See *State v. Millspaugh,* 257 N.W.2d 513, 516 (Iowa 1977); *State v.*

*Rosewall,* 239 N.W.2d 171, 174 (Iowa 1976). Trial court was right in overruling defendant's objections.

B. Instruction 10 read in part "[i]f a person makes a wrongful assault upon another with a deadly weapon and death ensues, the inference is warranted that such killing was with malice aforethought." Defendant objected because the instruction did not include the words "with opportunity to deliberate," citing *State v. Kelley,* supra, 253 Iowa at 1322–1323, 115 N.W.2d at 189. But instructions are to be considered as a whole and not in isolation. *State v. Tensley,* 249 N.W.2d 659, 662 (Iowa 1977). The concept of deliberation was incorporated in instruction 12. Assuming defendant has any ground to object to an instruction on malice after having been convicted of only manslaughter, we find no error.

C. Defendant alleges failure to add "[a]n actual physical assault is not always a prerequisite to use of a deadly weapon in self-defense" to instructions 21 and 22 left the jury inadequately advised regarding the law of self-defense.

Instruction 21 included the following language:

"It is not necessary * * * to the right of self-defense that the danger be actual, but if when viewed from the standpoint of the assailed * * * such danger appears to be actual * * * it is sufficient even though the danger does not in fact exist * * *."

Instruction 22 stated in part:

"One may use a deadly weapon in his own defense only where it reasonably appears to him to be absolutely necessary to do so to save his own life, or to save his person from serious bodily injury."

Trial court's instructions were sufficient to cover the legal principles applicable to the factual issues generated by the trial. In such a case, trial court properly may choose to instruct in its own language. *State v. Robinette,* 216 N.W.2d 317, 318 (Iowa 1974).

D. Defendant assigns as error trial court's failure to submit defendant's in-

struction "[i]f the State fails to show the alleged crime was not committed in self-defense the defendant is entitled to a verdict of acquittal."

Trial court's instruction 20 stated in part:

"If the State has failed to prove by the evidence beyond a reasonable doubt that the defendant was not acting in self-defense, you should find the defendant not guilty."

We hold the above language adequately conveyed the concept contained in defendant's requested instruction.

E. Defendant argues trial court should have submitted defendant's instruction "[i]f you find the defendant was in fear of being assaulted so as to induce him to believe that he or his family were either in actual danger of death or receiving great bodily injury, whether real or apparent, the fact that he armed himself does not deprive him of the right of self-defense." Defendant relies on *State v. Ebelsheiser,* 242 Iowa 49, 58–59, 43 N.W.2d 706, 712 (1950). See also *State v. Fisher,* supra, 246 N.W.2d at 920.

Trial court's instruction 22 read in part:

"One may use a deadly weapon in his own defense only where it reasonably appears to him to be absolutely necessary to do so to save his own life, or to save his person from serious bodily injury."

Trial court's instruction 25 read in part:

"You are instructed that the defendant had the same right to do everything in the protection of his wife and her children that he could lawfully do in the protection of himself."

These instructions sufficiently conveyed the gist of defendant's requested instruction.

We find no reversible error in the instructional issues raised by defendant.

IV. *Did trial court err in overruling defendant's motion for new trial?*

Defendant's motion for new trial raised only those issues treated in the prior divisions. His brief concedes the motion "con-

tained no significant new material." Our conclusions concerning the issues treated in divisions I, II and III control here.

### V. *Was the jury verdict contrary to the evidence?*

Defendant argues the State did not meet its obligation to prove him guilty of manslaughter beyond a reasonable doubt. He asserts State's evidence not only failed to negate his self-defense theory, it affirmatively discloses he acted in self-defense.

This is merely another way of contending defendant's motion for directed verdict should have been sustained. We have already arrived at a different result in division II. The same factual analysis and legal principles apply here.

### VI. *Did trial court err in refusing to grant probation?*

 Defendant asserts trial court abused its discretion in refusing to grant him probation and sentencing him to imprisonment in the Men's Reformatory at Anamosa for a period not to exceed eight years.

Probation was recommended in a presentence investigation report submitted by Iowa Bureau of Community Corrections Services. At sentencing two of defendant's former business associates testified favorably concerning his probation potential. They indicated a willingness to employ him.

Trial court's statement from the bench giving its reasons for refusing to grant probation and imposing imprisonment appear on three pages of the transcript. This procedure was approved in *State v. Horton*, 231 N.W.2d 36, 39 (Iowa 1975), follows ABA Standards, Sentencing Alternatives and Procedures § 5.6(ii) (1968), and conforms to the Iowa Rules of Criminal Procedure which will be effective January 1, 1978. Acts 66 G.A. ch. 1245, ch. 1, Div. XIII Rules 22(3)(d) (1976) as amended, Acts 67 G.A. S.F. 289 § 66 (1977), see Iowa Legislative Service p. 284 (West Pub. Co. 1977) ("The court shall state on the record its reason for selecting the particular sentence.").

The record of defendant's prior violence and threats of violence with the weapon used in this crime impressed trial court. This evidence was introduced at trial after defendant put in issue his reputation as a peaceful, law-abiding citizen. On prior occasions defendant had struck a minor with the revolver and had fired it into a bed occupied by his wife.

We hold under this record trial court did not abuse its sentencing discretion in concluding defendant's rehabilitation and community protection could be achieved best by a period of incarceration.

We affirm the judgment below.

AFFIRMED.