STATE of Iowa, Appellee,

v.

William Murry HILLSMAN, Appellant.

No. 62454.

Supreme Court of Iowa.

June 27, 1979.

R. Fred Dumbaugh, Cedar Rapids, for appellant.

Thomas J. Miller, Atty. Gen., Ann Fitzgibbons, Asst. Atty. Gen., Eugene J. Kopecky, Linn County Atty. and Denver D. Dillard, Asst. Linn County Atty., for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, REES, HARRIS and ALLBEE, JJ.

ALLBEE, Justice.

William Murry Hillsman stands convicted of the crimes of delivery of a controlled substance, heroin, for the purpose of making a profit, a violation of section 204.-401(1), The Code 1979, and possession of a controlled substance, marijuana, a violation of section 204.401(3), The Code 1979. His appeal attacks the conviction for delivery of heroin and makes five specific allegations of error by trial court. We find no merit in any of his contentions and affirm.

Hillsman was arrested during a raid by the Cedar Rapids police on a residence in Cedar Rapids. That raid was conducted at approximately 9 p. m. on February 25, 1978. Also present in the residence with Hillsman at the time of the raid was Kathleen Doyle, later to become the State's sole non-police witness against Hillsman.

Upon discovering Doyle's presence, the police detective in charge of the raid requested her cooperation and assured her that she would not be prosecuted. Doyle did cooperate. She submitted to a urine test, which indicated that she was under the influence of heroin, and gave a statement. At trial, she indicated that defendant, Hillsman, had sold her heroin in the early afternoon of the day of the raid, and that she was present at the time of the raid to purchase more heroin.

We take up defendant's assignments of error in the order in which they are argued in his brief.

■ I. Defendant's first contention is that trial court erred in refusing to instruct the jury that defendant could not be convicted on the uncorroborated testimony of an accomplice. He argues that Doyle was an accomplice or solicited person within the ambit of Iowa R. Crim. P. 20(3), and that her testimony was essential to the conviction. Defendant's reference to "solicited person" seems to be a mere reflection of the language of the rule, and not a serious contention. We thus consider only the accomplice issue.

The claim that Doyle was an accomplice is based on the fact that she was the person who purchased the drugs that defendant was accused of having delivered. It is for that reason that the contention fails.

The term "accomplice," as it was used in section 782.5, The Code 1966, was construed in *State v. Jennings*, 195 N.W.2d 351, 356–57 (Iowa 1972). The new rule is identical to that prior Code section, except for the addition of the presently irrelevant "solicited person" language. *Jennings* defined an "accomplice" as one who "could be charged with and convicted of the specific offense for which an accused is on trial. [Citations.]" 195 N.W.2d at 356.

Thus the question becomes whether Kathleen Doyle could be convicted of delivery of a controlled substance because she purchased heroin from defendant. That question is answered by *State v. Lott*, 255 N.W.2d 105, 107 (Iowa 1977). In *Lott* this court held that a customer is not guilty of delivery under section 204.401(1). Doyle was not an accomplice to defendant's crime. A corroboration instruction would have been inappropriate.

II. Defendant next complains that the evidence was not sufficient to support his conviction because there was no evidence that defendant made a profit in selling heroin to Doyle in the transaction in question.

The standard for review of such questions was set out in *State v. Overstreet*, 243 N.W.2d 880, 883–84 (Iowa 1976). Although the test repeated in *Overstreet* regarding adequacy of circumstantial evidence, *see* 243 N.W.2d at 884, has been supplanted by a revised standard, *see State v. O'Connell*, 275 N.W.2d 197, 204–05 (Iowa 1979), the remaining aspects of *Overstreet* still apply here.

The State bore the burden of showing that Hillsman delivered the heroin to Doyle for the purpose of making a profit. Section 204.410, The Code 1979. The statute requires only the purpose, and not the accomplishment, of profit-making.

In *State v. Didley*, 264 N.W.2d 732, 733 (Iowa 1978), this court recognized that the definition of "profit" given in *State v. McNabb*, 241 N.W.2d 32, 35 (Iowa 1976), applied to the post July 1, 1976 version of section 204.410; that is, profit is "the excess of returns over expenditures."

The following evidence supported the jury's finding of a profit motive:

(1) In testifying about the raid in which defendant was arrested, Detective J. D. Hansel described the attempts by the police to gain access to the house by way of the back door. The door was a heavy one that opened outward, making it impossible to kick it in. It was equipped with a peep hole, and latched shut with three large metal hooks. Police officers gained admission through that door only after it was unlocked from inside.

(2) The front door was kept closed by construction spikes on the opening side. Nonetheless, officers were able to break it down after trying for about thirty seconds.

(3) Hansel testified that defendant had $1200 on his person at the time of his arrest.

(4) During the period of several weeks prior to the raid in which the police kept the raided building under surveillance, approximately 100 different people were seen entering or leaving the establishment. Traffic was heaviest after two in the morning.

(5) Doyle spent between $8000 and .$9000 on heroin in the two months prior to the raid. She testified that half or less of that money went to people other than defendant.

(6) Defendant and Doyle engaged in bargaining which would often result in Doyle obtaining quantity discounts. That is, whereas a single "pill" or "hit" of heroin cost $30, four would cost $100, five would cost $120 or $130, and six would go for $150.

(7) Defendant was protective of Doyle's business. If he was out of heroin, he would send Doyle to "Cleo" or occasionally "Mac." Usually, however, defendant preferred that Doyle wait for a new shipment rather than go outside of defendant's circle of acquaintances.

(8) Defendant would seek Doyle's business. He would call to inform her that he had received a new shipment, particularly "if he had been out for a while."

Some of these facts, particularly the doors and the heavy late night traffic, could be explained by Detective Hansel's testimony that the building which was raided was an after hours bar and a gambling establishment. But they are also consistent with a drug distribution scheme. And certainly Doyle's descriptions of her dealings with defendant depicted "arms-length commercial transactions" which tended to show that defendant's purpose was to make a profit. *See Didley*, 264 N.W.2d at 733.

When the evidence is viewed in the light most favorable to the State and all fair inferences in favor of the jury's action are drawn, there is substantial evidence to find that defendant delivered the heroin for the purpose of making a profit. His conviction is amply supported by the evidence.

III. The third attack which defendant makes on his conviction arises out of trial court's refusal to admit a copy of the minute of Kathleen Doyle's testimony, which was attached to the trial information, for the purpose of impeaching Doyle's trial testimony. Defendant specifies four respects in which the minute of testimony and Doyle's trial testimony were different.

At trial, during a session out of the jury's presence, the assistant county attorney who had prepared the information and attached minutes of testimony stated that he had not spoken to Doyle, but that, in drafting those minutes, he had relied upon the reports of police officers. Trial court offered to recess to allow defendant to depose the officers. Defendant declined to accept the court's offer, but instead called, at trial, the

police officers upon whose reports the minutes had been drafted. Their testimony revealed that none had obtained statements from Doyle which supported the minute of her testimony. Thus it appeared, and the assistant county attorney admitted, that the minute of Doyle's testimony was based on the assistant's mistaken understanding of police reports.

Defendant now argues that he was denied the right to confrontation because he was not permitted to use the minute as if it was a prior inconsistent statement by Doyle. Defendant's argument is meritless, however, because a mistake by the assistant county attorney sheds no light on Doyle's credibility.

It has been held that a failure to record a witness's testimony before the grand jury does not violate a criminal defendant's right to confront and cross-examine. *United States v. Skolek*, 474 F.2d 582, 587 (10th Cir. 1973) (per curiam). *Skolek* is like this case because in both instances the factual basis for the decision to prosecute is not available to the defendant for purposes of cross-examination. In light of the *Skolek* rule, we cannot hold that defendant suffered a violation of his right to confrontation.

Nor does his argument that he was misled by the errors in the minute assist him. First, he is asking for the wrong remedy. An unjustified attack on Doyle's credibility is not an appropriate method for repairing any damage which defendant may have suffered by misdirection. And, defendant had available a method to avoid being misled and prepare for Doyle's testimony. He was given an opportunity to depose her after she was given immunity. Trial court did not err in refusing to permit introduction of the minute of testimony to impeach Doyle.

IV. Defendant next insists that trial court erred in refusing to dismiss the prosecution because the State failed to disclose exculpatory evidence. His claim is that the State did not disclose the source of information used to draft the minute of Doyle's testimony which was attached to the trial information. This complaint is a companion to that just set out, and arises from defend-

ant's desire to impeach Doyle by showing that she had made prior statements which were inconsistent with her trial testimony.

■ This argument suffers from two shortcomings. First, dismissal of the prosecution is not an appropriate remedy even if exculpatory evidence has been suppressed. Instead, suppression of exculpatory evidence should be remedied by the setting aside of the conviction, and the grant of a new trial. *See e.g., United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Giles v. Maryland*, 386 U.S. 66, 81, 87 S.Ct. 793, 800–01, 17 L.Ed.2d 737, 748–49 (1967). That new trial may even be limited to the issues affected by the suppression of evidence. *Brady v. Maryland*, 373 U.S. 83, 88–91, 83 S.Ct. 1194, 1197–98, 10 L.Ed.2d 215, 219–20 (1963).

■ Second, there has been no showing, nor even any indication, that any exculpatory evidence exists in this case. In fact, all indications are that there is no such evidence and that the variations between Doyle's trial testimony and her minute of testimony were the result of the assistant county attorney's errors. In the absence of a showing that exculpatory evidence existed, *State v. Hummell*, 228 N.W.2d 77, 81 (Iowa 1975); *cf. United States v. Evanchik*, 413 F.2d 950, 953 (2d Cir. 1969) ("assurance by the government that it has in its possession no undisclosed evidence that would tend to exculpate defendant justifies the denial of a motion for inspection that does not make some particularized showing of materiality and usefulness"), trial court's refusal to dismiss the prosecution was correct.

■ V. Finally, defendant asks this court to re-examine the constitutionality of initiating a criminal prosecution by an information rather than a grand jury indictment. He posits special prejudice because he claims that, whereas he was denied the opportunity to impeach Doyle with the minute of her testimony attached to the information, he would have been permitted to make such use of the minute of her testimony before the grand jury. Under prior

practice, at least, this was the case. *State v. Huckins*, 212 Iowa 283, 287, 234 N.W. 554, 557 (1931).

His primary argument seems to be that requiring indictment by a grand jury would protect criminal defendants from, among other things, errors by prosecutors. He points to the fact that the minutes of testimony attached to the information, which he argues are to show that the accused has committed a crime, were in this case based either on error or on unreliable information.

The Iowa Constitution specifically provides that the "General Assembly may provide for holding persons to answer for any criminal offense without the intervention of a Grand Jury." Iowa Const. amend. [9] (Third amendment of 1884). Thus, no challenge under the state constitution is tenable.

The Federal Constitutional question was settled in *Hurtado v. California*, 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884), which held that fourteenth amendment due process does not require the states to charge by indictment. Defendant attempts to distinguish *Hurtado*, however, by pointing to various safeguards in the California system of charging by information which are not present in the Iowa system. A similar argument was rejected in *Lem Woon v. Oregon*, 229 U.S. 586, 33 S.Ct. 783, 57 L.Ed. 1340 (1913). *See also Ocampo v. United States*, 243 U.S. 91, 93–101, 34 S.Ct. 712, 712–16, 58 L.Ed. 1231, 1233–36 (1914). We are bound by these determinations of federal law. Defendant's last contention has no merit.

All assertions, whether specifically discussed or not, have been considered. None have been found to warrant anything but affirmance of the conviction.

AFFIRMED.